STATE OF NORTH CAROLINA v. JAMES TYRONE ABRAHAM AND PATRICK LAVELL CURETON

No. 478A91

(Filed 9 December 1994)

## 1. Homicide § 374 (NCI4th)— first-degree murder—two defendants—acting in concert—evidence sufficient

The trial court did not err by denying defendant Abraham's motion to dismiss a charge of first-degree felony murder for insufficient evidence where the evidence would permit the jury to find that Foster, Hardin, Steve and Gaddy were walking to Foster's mother's house when they were accosted by defendants Abraham and Cureton on Lander Street; words were exchanged and both Abraham and Cureton began firing handguns; as Hardin and Foster ran away, Hardin's leg was grazed by a bullet; Hardin fell into some nearby bushes and watched Cureton fire in his direction and Abraham fire in Foster's direction; and Gaddy was found dead in the middle of Lander Street after the shooting with fatal gunshot wounds to his head and abdomen and another wound to the sole of his foot. Although defendant Abraham contended that the evidence was not sufficient to show that either he or someone acting in concert with him fired the fatal shots, the jury could reasonably infer that Abraham and Cureton were acting in concert when they accosted the other four men and began firing their weapons, the other four men were unarmed and ran when the shooting began, Cureton shot at and wounded Hardin, Abraham shot at Foster, and bullets fired during one of these assaults fatally wounded Gaddy while Gaddy was running away. Since the evidence supports the guilt of both defendants as to all of the felonious assaults, it makes no difference which of the felonious assaults is the underlying felony or which defendant actually fired the fatal shots or whether defendants intended that Gaddy be killed.

**Am Jur 2d, Homicide § 445.**

## 2. Homicide §§ 262, 478 (NCI4th)— assault with a deadly weapon—different victim killed—felony murder

The trial court did not err by submitting to the jury first-degree murder based on felony murder where defendant was seen shooting at one man and a different person was killed. Although defendant argued that the felonious assaults merged

with the homicide and the only proper theory by which he could
be convicted is transferred intent, the felony murder theory upon
which the case was submitted was fully supported by the evi-
dence and the failure to submit the case on a transferred intent
theory was not detrimental to defendant.

**Am Jur 2d, Homicide §§ 442, 498.**

3. **Criminal Law § 359 (NCI4th)— defense witnesses shackled
   and in prison uniform—no error**

   The trial court did not err in a first-degree murder prosecu-
tion by allowing defense witnesses to appear shackled and in
prison uniform where defendant never moved that the witnesses
be permitted to appear in civilian clothes or unrestrained;
defense counsel requested only that the shackled defense wit-
nesses be placed in the witness chair outside the presence of the
jury, which the court allowed; and the court's approach appears
to have been to permit the parties to the case to appear in street
clothes and unshackled but to draw the line at witnesses who
were neither victims nor defendants. This decision is left to the
judge's discretion. N.C.G.S. § 15A-1031.

**Am Jur 2d, Criminal Law §§ 844-846.**

**Right of accused to have his witnesses free from hand-
cuffs, manacles, shackles, or the like. 75 ALR2d 762.**

**Propriety and prejudicial effect of witness testifying
while in prison attire. 16 ALR4th 1356.**

4. **Evidence and Witnesses § 318 (NCI4th)— first-degree
   murder—evidence of prior shooting—admissible—identity**

   The trial court did not err in a first-degree murder prosecu-
tion by allowing evidence of a prior shooting involving defend-
ants where the evidence was offered under N.C.G.S. § 8C-1, Rule
404(b) to prove the identity of the assailants in this shooting.
Defendant conceded that the two months between the prior act
and the current offenses meets the temporal proximity test, but
contended that the acts were not sufficiently similar; however,
the casings recovered from the shootings matched and witnesses
on both occasions identified defendants in a blue Cadillac on a
Charlotte Street before they began the respective assaults. The

similarities were sufficient to be probative on the issue of the identity of the assailants in the instant case.

**Am Jur 2d, Evidence § 452; Homicide § 312.**

5. **Criminal Law § 434 (NCI4th)— first-degree murder—prosecutor's argument—defendant's prior conduct**

There was no error in a first-degree murder prosecution where a prior shooting had been admitted for identification purposes and the prosecutor referred to that incident in his closing argument and said "Make him stop." The prosecutor reminded the jury that the evidence surrounding the prior incident was properly admitted for the limited purpose of showing identity and it was not improper for the prosecution to emphasize the similarities between the two incidents or to note that different and unrelated witnesses had testified that defendant Abraham had assaulted them on separate occasions. As for the "Make it stop" argument, the prosecutor may not argue the effect of defendant's conviction on general deterrence, but may argue specific deterrence, that is, the effect of conviction on defendant.

**Am Jur 2d, Trial § 626.**

**Supreme Court's views as to what courtroom statements made by prosecuting attorney during criminal trial violate due process or constitute denial of fair trial. 40 L. Ed. 2d 886.**

6. **Indictment, Information, and Criminal Pleadings § 54 (NCI4th)— assault—use of victim's false name—amendment—error**

The trial court was without authority to allow an amendment to an indictment to change the name of the victim, and the judgment was arrested and the matter remanded, where one of the victims of a shooting apparently gave a false name to officers, that name was used on the indictment, defendant moved to dismiss the indictment, and the trial court denied that motion and allowed the State to amend the indictment over defendant's objection. A change in the name of the victim substantially alters the charge in the indictment and neither the court nor the prosecution had the authority to amend the indictment's substance. The court should have dismissed the charge and granted the State leave to secure a proper bill of indictment. N.C.G.S. § 15A-923(e).

**Am Jur 2d, Indictments and Informations §§ 129, 171 et seq., 269-273.**

**Power of court to make or permit amendment of indictment with respect to allegations as to name status, or description of persons or organizations. 14 ALR3d 1358.**

7. **Jury § 201 (NCI4th)— first-degree murder—jury selection—desire of juror to hear defendants' version—questions by judge—excusal for cause**

The trial court did not err in a first-degree murder prosecution in its examination of a potential juror, by excusing that potential juror, or by denying defendant the opportunity to rehabilitate the juror where the defendant contended that the court's examination of the juror revealed bias against her, but the trial court's examination was conducted in a manner intended to ensure that only those persons were selected to serve who could render a fair and impartial verdict; the questions were limited in scope to the juror's desire to hear defendants' account of the incident; the prosecutor's challenge of the juror was supported by her responses to questions by both the prosecution and the trial court in which she made clear that the defendants' failure to testify might prejudice them in her deliberation; and nothing in the record indicates that additional proper questioning would have resulted in different responses.

**Am Jur 2d, Jury §§ 279 et seq., 294 et seq.**

8. **Homicide § 583 (NCI4th)— first-degree murder—acting in concert—instructions—no plain error**

There was no plain error in a first-degree murder and assault prosecution where defendant Cureton was convicted of feloniously assaulting with a deadly weapon with intent to kill the victim Hardin, convicted of the same crime against the victim Foster on a theory of acting in concert with defendant Abraham, convicted of first-degree felony murder of the victim Gaddy, and defendant Cureton did not object to the instruction at trial but contended on appeal that the instructions allowed the jury to apply the principle of acting in concert to convict him of felonious assault and first-degree murder without determining whether he, himself, ever formed the requisite intent to kill. Because of the instructions which the jury was given and because the jury convicted Cureton of felonious assault of Hardin with intent to kill, it is inconceivable that the jury would not have

found that Cureton shared with Abraham a common purpose to assault Foster with the specific intent to kill had the jury been clearly instructed that such a finding was required.

**Am Jur 2d, Homicide § 507.**

**9. Indigent Persons § 24 (NCI4th)— first-degree murder— expert on identification—not appointed—no particularized need**

The trial court did not err in a first-degree murder prosecution by denying defendant Cureton's motion for an expert in eyewitness identification where defendant failed to show how an expert would have assisted him materially. This was not a case involving the uncorroborated identification of a single eyewitness, the identification issues for which defendant Cureton sought expert assistance involved matters within the scope of the jury's general capability and understanding, and defendant did not argue at the motion hearing that an expert in eyewitness identification would have afforded him a mechanism for conveying to the jury the unreliability of Hardin's testimony.

**Am Jur 2d, Criminal Law §§ 771, 1006.**

**Right of indigent defendant in criminal case to aid of state by appointment of investigator or expert. 34 ALR3d 1256.**

**10. Evidence and Witnesses § 318 (NCI4th)— first-degree murder—prior shooting—admissible**

The trial court did not err in a murder and assault prosecution where defendant Cureton contended that he was unfairly prejudiced by the amount of time the State devoted to developing a prior shooting incident, but the State questioned only one eyewitness to the prior shooting and the other testimony was to describe the chain of custody and examination of the casings found at the scene. The evidence was admissible for identification and its purpose was not to show defendant Cureton's character.

**Am Jur 2d, Evidence § 452; Homicide § 312.**

**11. Criminal Law § 319 (NCI4th)— first-degree murder and assault—two defendants—motion to sever—denied**

The trial court did not err by denying an assault and murder defendant's motion to sever where defendants were charged with

the same offenses, all of which the evidence tended to show arose out of a common scheme and were part of the same transaction, and their defenses were not antagonistic. Although defendant Cureton argues that evidence of a prior shooting would not have been admitted against him in a separate trial, that evidence would have been admissible against him on the issue of identity.

Am Jur 2d, Actions § 159.5; Trial §§ 157 et seq.

12. **Evidence and Witnesses § 2522 (NCI4th)— first-degree murder and assault—mental examination of State's witness—denied**

The trial court did not err in a prosecution for murder and assault by denying defendant Cureton's request to have a State's witness undergo a mental examination. A trial judge does not have the authority to compel a witness to submit to a psychiatric examination.

Am Jur 2d, Witnesses § 84.

13. **Evidence and Witnesses § 2986 (NCI4th)— first-degree murder and assault—victim's prior convictions excluded— no error**

The trial court did not err in a prosecution for assault and murder by not allowing the defendant to question one of the victims regarding charges against him which had been the subject of a plea arrangement. Although defense counsel contended that this evidence bore on the witness's lack of character for peacefulness and evidence that he had used the same caliber handgun in an assault as was used in this incident should have been allowed to impeach his credibility after he denied being armed, there was no claim of self-defense in this incident and, even had the impeachment theory been urged at trial, the court would have been well within its discretion in sustaining the objection because the use of the same caliber weapon in the commission of an earlier assault has slight bearing, if any, on whether the victim was armed during this shooting.

Am Jur 2d, Witnesses §§ 563 et seq.

**Comment Note.—Impeachment of witness by evidence or inquiry as to arrest, accusation, or prosecution. 20 ALR2d 1421.**

**Right to impeach witness in criminal case by inquiry or evidence as to witness' criminal activity for which witness**

was arrested or charged, but not convicted—modern state cases. 28 ALR4th 505.

14. **Evidence and Witnesses § 3018 (NCI4th)— first-degree murder and assault—State's witnesses—impeachment— dismissed charges and warrants—not allowed**

The trial court did not err in a prosecution for murder and multiple assaults by not allowing defendant to impeach a victim by having him admit that a charge of larceny of an automobile was dismissed pursuant to a plea to a drug offense, by not allowing defendant to question the victim about a pending warrant for his arrest for possession of a firearm without a license, or by sustaining the State's objection when trial counsel asked another State's witness whether there were any charges pending against him when counsel interviewed him.

**Am Jur 2d, Witnesses §§ 587-590.**

**Comment Note.—Impeachment of witness by evidence or inquiry as to arrest, accusation, or prosecution. 20 ALR2d 1421.**

**Right to impeach witness in criminal case by inquiry or evidence as to witness' criminal activity not having resulted in arrest or charge—modern state cases. 24 ALR4th 333.**

15. **Criminal Law § 497 (NCI4th)— first-degree murder and assault—jury deliberations—use of transcripts denied**

The trial court did not abuse its discretion by denying the jury's request for copies of the transcript of trial testimony while allowing the jury's request to view exhibits in the jury room. The jury requested copies of the entire transcript and, while the defense initially objected to the jury's examination of the exhibits, the objection was subsequently withdrawn.

**Am Jur 2d, Trial §§ 1665 et seq.**

16. **Evidence and Witnesses § 761 (NCI4th)— first-degree murder and assault—inadmissible hearsay—not prejudicial**

There was no prejudicial error in a prosecution for murder and multiple assaults where the trial court admitted testimony from one witness that two of the victims had come to her door with one of them saying "Tari has assassinated Tyrone" and testimony from another witness that the same victim had awakened him in the early morning hours and told him that "[H]e was run-

ning away from the scene of the shooting, as he was running away, he could see out of the corner of his eye. [Defendants] was shooting, both of them." Assuming that these out-of-court statements were inadmissible hearsay because they went so far beyond the witness' in-court testimony as not to be corroborative, there was no prejudice because the other evidence established clearly and overwhelmingly that either defendant Cureton or defendant Abraham, acting in concert with the other, shot and killed one victim as he attempted to flee. There is no possibility that a different result would have occurred at trial had the complained-of evidence not been admitted.

**Am Jur 2d, Appeal and Error § 806.**

17. **Criminal Law § 461 (NCI4th)— first-degree murder and assault—prosecutor's argument—matters not in evidence—no gross impropriety**

There was no gross impropriety in a prosecution for first-degree murder and assault from the prosecutor's argument that an officer had identified defendant Cureton from a photograph when the jury had not heard evidence concerning the officer's examination of a photograph. The objection which was sustained at trial concerned the officer's search through police records, which would have revealed a prior police record but no reference to that search was made. Merely stating that the officer identified defendant Cureton from a photograph was an innocuous comment which could not be deemed improper even though there was no evidence at trial concerning a photograph.

**Am Jur 2d, Trial §§ 609 et seq.**

18. **Criminal Law § 928 (NCI4th)— murder and assault—inconsistent verdicts**

The trial court properly declined to accept the original verdict in a prosecution for murder and multiple assaults and properly reinstructed the jury and directed it to retire and deliberate further where the jury first returned guilty verdicts against defendant Cureton for assaulting Hardin with a deadly weapon with intent to kill, of assaulting Foster with a deadly weapon with intent to kill under the theory of acting in concert, of first-degree murder of Gaddy, and of second-degree murder of Gaddy under the theory of acting in concert without premeditation and deliberation. A defend-

ant may be convicted of only one degree of homicide for a single murder.

**Am Jur 2d, Trial §§ 1806 et seq.**

**Inconsistency of criminal verdict as between different counts of indictment or information. 18 ALR3d 259.**

19. **Evidence and Witnesses § 2477 (NCI4th)— murder and assault—sequestration of witnesses—pretrial meeting—no violation of sequestration order**

The trial court did not err by failing to find a violation of its sequestration order based on the prosecutor's alleged joint pretrial conferences with witnesses where the order contemplated nothing more than the sequestration of witnesses during their testimony. Neither N.C.G.S. § 8C-1, Rule 615 nor the trial court's order precluded counsel from interviewing witnesses together in preparation for trial.

**Am Jur 2d, Trial §§ 240 et seq.**

**Prejudicial effect of improper failure to exclude from courtroom or to sequester or separate state's witnesses in criminal case. 74 ALR4th 705.**

20. **Evidence and Witnesses § 1070 (NCI4th)— murder and assault—flight—evidence sufficient to support instruction**

The evidence was sufficient to support an instruction on flight in a prosecution for murder and assault where both defendants were seen by an officer walking away from the scene shortly after the shooting occurred; defendants detoured across a parking lot as the officer approached; defendants denied hearing any shooting and continued to walk away; and defendant Cureton was arrested three weeks later after an officer found him hiding in a closet underneath a pile of clothing. Moreover, the instruction did not express an opinion on the flight issue where the court accurately informed the jury that it was the contention of the State, not the defendants, that defendants had fled.

**Am Jur 2d, Evidence §§ 532 et seq.**

Appeal of right by defendants pursuant to N.C.G.S. § 7A-27(a) from judgments imposing sentences of life imprisonment entered by Saunders, J., at the 7 January 1991 Criminal Session of Superior Court, Mecklenburg County, upon a jury verdict finding defendants

guilty of first-degree murder. Defendants' motion to bypass the Court of Appeals as to additional judgments was allowed by the Supreme Court on 27 April 1992. Heard in the Supreme Court on 18 March 1993.

*Michael F. Easley, Attorney General, by Debra C. Graves, Assistant Attorney General, for the State.*

*Joseph F. Lyles for defendant-appellant Abraham.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant-appellant Cureton.*

EXUM, Chief Justice.

Defendants James Tyrone Abraham and Patrick Lavell Cureton were indicted for the first-degree murder of Tariano Gaddy and for felonious assaults against Darryl Foster and Joice Hardin. They were tried capitally in a joint trial. A jury convicted each defendant of first-degree murder on the theory of felony murder and two counts of assault with a deadly weapon with intent to kill. Upon the jury's recommendation of life imprisonment for both defendants on the first-degree murder convictions, the trial court imposed a life sentence on each defendant and a consecutive three-year sentence on one assault conviction. The trial court arrested judgment on the other assault conviction as to each defendant.

On appeal, defendant Abraham brings forth six assignments of error and defendant Cureton brings forth twelve assignments of error. Because of a fatal variance in the indictments for felonious assault of Joice Hardin, we arrest judgment on defendant Abraham's conviction for assault with a deadly weapon with intent to kill Joice Hardin. We conclude defendants' trial was otherwise free of prejudicial error.

I.

The State's evidence tended to show the following:

In November 1989 Darryl Foster, then age twenty three, lived with his mother and two sisters in Charlotte. Joice ("JJ") Hardin, then age seventeen, lived with the Foster family.

On the evening of 28 November 1989, Foster, Hardin and Tariano Gaddy, the deceased, drank beer at the Hornet's Rest Motel and returned to the Foster house. After Foster gave Gaddy his blue-

hooded coat to wear, the three men proceeded to Dave's Liquor House on Rozzells Ferry Road. A man identified only as "Steve" joined them en route. Upon entering the liquor house, Foster noticed a blue Cadillac he identified as belonging to defendant Cureton parked in front of the building.

Around 1:30 a.m. on 29 November 1989, Sharon Whitley (alias "Sharon Tate") observed defendant Abraham and two or three other men outside the area of the liquor house. Whitley observed Abraham and the others get into a blue Cadillac and drive toward Oregon and Lander streets.

When Whitley saw Foster and Hardin in the liquor house, she informed them that defendant Abraham and some other men had gone down the street. Without responding, Foster and Hardin, along with Gaddy and Steve, left the liquor house and proceeded down Rozzells Ferry Road in the direction of Halsey Street. To reach Halsey Street, the four men headed in the direction of Lander Street and Oregon Street and followed a shortcut on Lander Street. The shortcut took them through a parking lot behind an establishment called the Queens and Kings Lounge.

As they proceeded through the lot, defendants Abraham and Cureton stepped out from behind the lounge. Foster had known Abraham for about three years and Cureton for about seven years. Abraham told the four men that he heard someone had fired shots at his mother's house. When Foster denied Abraham's accusation, Cureton displayed a gun and pointed it toward the four men. At that time, Abraham's hand was inside his trenchcoat pocket. Cureton shot twice in the air, and Foster, Hardin, Steve and Gaddy began to run. Several gunshots ensued. Foster heard about fourteen gunshots. Foster fell into some bushes and then ran across Lander Street. As he did so, he saw defendants walking behind a house on Rozzells Ferry Road. He then got up and ran home where he found Hardin holding a shotgun in the driveway.

Hardin also had run toward the bushes. Hardin had known Abraham for about a year. He saw Cureton shoot in his direction and Abraham shoot toward the right side of the street where Foster had run. At that time, both defendants were standing in the middle of the street. Hardin ran toward Boyd Street and began walking when he reached a path. On the path, Hardin met a man he knew by the name of Rocky and borrowed a shotgun from him. He then proceeded to the

Foster house. Hardin did not see what happened to Gaddy. Hardin's leg was grazed by a bullet as he ran.

While at the Foster house, Foster and Hardin discussed the shooting with Foster's mother. Foster's sister arrived about fifteen minutes later and drove the two men to Westwood where they visited a friend, Herman Meeks. On their way to Meeks' house, Foster and Hardin drove by Lander Street where they saw Gaddy's body in the street surrounded by police. From Meeks' house the two men went to the Knights Inn and registered for a room.

In the early morning of 29 November Joseph Adamo, a patrol officer with the Charlotte Police Department, was parked in the vicinity of Nelson Avenue, located across Rozzells Ferry Road from Lander Street. He heard gunshots coming from the Lakeview neighborhood, which is in the vicinity of Lander and Boyd streets. Adamo proceeded toward the area of the shooting without sirens or blue lights and arrived within a few minutes. He approached Oregon Street and observed two men, later identified as defendants Abraham and Cureton, walking toward his car. As Adamo approached defendants, they detoured across a parking lot. Adamo stopped his car and asked defendants if they had heard any gunshots. Without stopping or slowing down, defendants told Adamo that they had not heard anything. Adamo proceeded toward Lander Street where he found Gaddy's body prone in the middle of the street. Gaddy had blood around his head and showed no signs of a pulse.

An autopsy revealed that Gaddy had received four gunshot wounds. One bullet had entered his head above the right ear and passed through the brain before exiting. A second bullet had entered the neck and then traveled up through the head. A third had entered the right arm, abdomen and liver, and a fourth bullet had entered the sole of the right foot. The cause of death was determined to be gunshot wounds to the head and abdomen. The autopsy further revealed powder particles around the entrance wound to the head, indicating that this wound had been delivered at a range of two to three feet.

Officer C.D. Bryant, Charlotte Police Department crime scene technician, arrived at Lander Street at 2:23 a.m. on 29 November and found Gaddy dead in the street wearing a blue, blood-stained, hooded coat, a Yale University sweatshirt and jeans. Bryant found eight spent casings at the scene. One of the casings was found next to Gaddy's head, and others were strewn up the street to as far as 45 feet from Gaddy's body.

Todd Nordhoff, a firearms and tool examiner with the Charlotte Police Department Crime Laboratory, examined the casings and determined that they were all 9 mm. Luger semi-automatic casings which had been fired from two firearms—five had been fired from one firearm and three from another firearm. Nordhoff determined that two bullets recovered from Gaddy's neck and abdomen were consistent with 9 mm., or .38-caliber, bullets and had been fired from the same weapon. He could not determine, ballistically, whether the bullets had been fired from the same weapon which fired the cartridges.

On 30 November Officer Adamo determined that Abraham was one of the men he had earlier witnessed walking near the scene of the shooting. Upon discussing the incident with Officer Hollingsworth, Adamo identified Cureton as the man he had seen with Abraham.

Cureton presented no evidence. Abraham, however, presented evidence which included the testimony of Willie Beckman and Spencer Hunter. Beckman testified he saw Hardin and Foster after the shooting and that Hardin was carrying a handgun. Hunter testified he lived in Foster's neighborhood at the time of the shooting. When he heard gunfire, he went outside and saw Foster and Hardin running up a path through a neighboring field. Hunter testified that Foster was carrying a long gun, either a rifle or a shotgun.

The jury returned verdicts finding Abraham guilty of the following crimes: assault with a deadly weapon with intent to kill Hardin by acting in concert; assault with a deadly weapon with intent to kill Foster; first-degree felony murder of Gaddy; and second-degree murder of Gaddy by acting with malice but without premeditation and deliberation.

The jury found Cureton guilty of the following crimes: assault with a deadly weapon with intent to kill Foster by acting in concert; assault with a deadly weapon with intent to kill Hardin; first-degree felony murder of Gaddy; and second-degree murder of Gaddy by acting in concert without premeditation and deliberation.

The trial court, apparently believing the verdicts finding defendants guilty of both first- and second-degree murder of Gaddy were inconsistent and mutually exclusive, reinstructed the jury on first-degree murder, felony-murder and second-degree murder and asked the jury to reconsider its verdicts as to those charges. After about three hours, the jury returned verdicts finding both defendants guilty

of first-degree felony murder of Gaddy; not guilty of first-degree murder by premeditation and deliberation and not guilty of second-degree murder.

Each defendant appealed separately and has filed separate briefs. Except for one issue common to both defendants, each defendant has raised different questions on appeal.

### Defendant Abraham

### II.

[1] Abraham first contends the trial court erred in denying his motion to dismiss on the ground that the evidence was insufficient to prove that either Abraham or Cureton fired the fatal bullets. He argues that even though the evidence is sufficient to place him at the scene and to show he discharged a 9 mm. handgun, the evidence is insufficient to show that either he or someone acting in concert with him fired the fatal shots.

We find these contentions without merit. On a motion to dismiss, the trial court must view all the evidence, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from it and resolving any contradiction in the evidence in its favor. *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984); *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 382 (1988). "The question for the court is whether substantial evidence—direct, circumstantial, or both—supports each element of the offense charged and defendant's perpetration of that offense." *State v. Rannels*, 333 N.C. 644, 659, 430 S.E.2d 254, 262 (1993). " 'Substantial evidence' is that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Cox*, 303 N.C. 75, 87, 277 S.E.2d 376, 384 (1981). "If there is substantial evidence of each element of the offense charged, or any lesser included offenses, the trial court must deny the motion to dismiss . . . and submit [the charges] to the jury for its consideration; the weight and credibility of such evidence is a question reserved for the jury." *State v. McAvoy*, 331 N.C. 583, 589, 417 S.E.2d 489, 493 (1992).

"Under the doctrine of acting in concert, if two or more persons act together in pursuit of a common plan or purpose, each of them, if actually or constructively present, is guilty of any crime committed by any of the others in pursuit of the common plan." *State v. Laws*, 325 N.C. 81, 97, 381 S.E.2d 609, 618 (1989), *judgment vacated on other*

*grounds,* 494 U.S. 1022, 108 L. Ed. 2d 603 (1990), *on remand,* 328 N.C. 550, 402 S.E.2d 573, *cert. denied,* —— U.S. ——, 116 L. Ed. 2d 174 (1991), *quoted in State v. Cook,* 334 N.C. 564, 433 S.E.2d 730 (1993). This is true even where "the other person does all the acts necessary to commit the crime." *State v. Jeffries,* 333 N.C. 501, 512, 428 S.E.2d 150, 156 (1993).

Murder is defined as the unlawful killing of another human being with malice and with premeditation and deliberation. N.C.G.S. § 14-17 (1993); *State v. Bonney,* 329 N.C. 61, 77, 405 S.E.2d 145, 154 (1991). Felony murder is murder "committed in the perpetration or attempted perpetration of any arson, rape or sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon." N.C.G.S. § 14-17; *State v. Cook,* 334 N.C. at 570, 433 S.E.2d at 733. Assault with a deadly weapon with intent to kill, N.C.G.S. § 14-32, is a felony involving use of a deadly weapon which would support a conviction of felony murder where the requisite relationship exists between the assault and the homicide. In *State v. Fields,* 315 N.C. 191, 197, 337 S.E.2d 518, 522 (1985), we stated:

> A killing is committed in the perpetration or attempted perpetration of a felony for the purposes of the felony murder rule where there is no break in the chain of events leading from the initial felony to the act causing death, so that the homicide is part of a series of incidents which form one continuous transaction.

The evidence taken in the light most favorable to the State would permit a jury to find the following facts: Foster, Hardin, Steve and Gaddy were walking back to Foster's mother's house when they were accosted by defendants Abraham and Cureton on Lander Street. Words were exchanged and both Abraham and Cureton began firing handguns. As Hardin and Foster ran away, Hardin's leg was grazed by a bullet. Hardin fell into some nearby bushes and watched Cureton fire in his direction and Abraham fire in Foster's direction. After the shooting, Gaddy was found dead in the middle of Lander Street with fatal gunshot wounds to his head and abdomen and another wound to the sole of his foot.

From this evidence, the jury could reasonably infer as follows: Abraham and Cureton were acting in concert when they accosted the other four men and began firing their weapons; the other four men were unarmed and ran when the shooting began; Cureton shot at and wounded Hardin; Abraham shot at Foster; bullets fired during one of these assaults by either Cureton or Abraham fatally wounded Gaddy

while Gaddy was running away. These inferences would support the first-degree felony murder verdicts against both defendants as returned by the jury on the theory that the bullets which killed Gaddy were fired during the course of one of the felonious assaults so that the assaults and the homicide were part of a continuous transaction. Since the evidence supports the guilt of both defendants as to all of the felonious assaults, it makes no difference which of the felonious assaults is the underlying felony or which defendant actually fired the fatal shots or whether defendants intended that Gaddy be killed. *See State v. Avery*, 315 N.C. 1, 337 S.E.2d 786 (1985); *State v. Streeton*, 231 N.C. 301, 56 S.E.2d 649 (1949).

Abraham's reliance on *State v. Bonner*, 330 N.C. 536, 411 S.E.2d 598 (1992) and *State v. Daniels*, 300 N.C. 105, 265 S.E.2d 217 (1980) is misplaced. In *Bonner*, Officer Pruitt, an off-duty police officer who was serving as a security guard at a restaurant, shot and killed two of four armed felons as they attempted to rob the restaurant. The defendants, the two surviving felons, escaped unharmed and later pled guilty to two counts of first-degree felony murder for the deaths of their accomplices, as well as the underlying felony of armed robbery. On appeal the defendants assigned error to the trial court's denial of their motions to withdraw their pleas on the ground that there was no factual basis to support the convictions for felony murder. This Court, agreeing with defendants' position, reversed the convictions, holding that the doctrine of felony murder did not extend to a killing which, although occurring during the commission of a felony, was directly attributable to defendants' adversary who was not acting in concert with them. *Id.* at 544-45, 411 S.E.2d at 603. In the present case, there is no evidence of shooting by anyone other than defendants. Unlike the conviction in *Bonner*, Abraham's conviction is based upon deadly actions committed by Abraham or his accomplice, Cureton, and not by any adversary.

In *Daniels* the evidence showed that the defendant and the deceased, two fleeing felons, were hiding in a wooded area surrounded by numerous armed police officers. After an exchange of gunfire between the felons and the police, the deceased was found dead from a gunshot wound to the head. This Court held that the State had failed to prove whether the deceased was killed by the defendant, the police, or someone else. *Id.* at 114, 265 S.E.2d at 222. Although the State established that many of the officers did not fire their weapons, it did not establish that no officer fired one. *Id.* Defendant and the deceased ran into the woods together; however, the deceased had not

been shot at close range. The Court further noted that the deceased was shot within forty feet of a residence in a thickly settled residential area, thus allowing for the possibility that someone in the residence or in a nearby residence had fired a shot. *Id.* Based on this evidence, the Court in *Daniels* held "the facts and circumstances [did] nothing more than raise a suspicion of defendant's guilt of homicide." *Id.* Unlike *Daniels*, the State's evidence here, as we have shown, permits a reasonable inference that the source of the fatal shots was either defendant Abraham or defendant Cureton, who were acting in concert.

### III.

**[2]** By another assignment of error, defendant Abraham contends submission to the jury of first-degree felony murder was error because there is no evidence of an underlying felony that could support such a theory. Defendant argues that the felonious assaults merged with the homicide and the only proper theory by which he could be convicted of murder on the basis of the assaults is that of transferred intent. For the application of the merger doctrine, he relies on *People v. Ireland,* 70 Cal. 2d 522, 450 P.2d 580, 75 Cal. Rptr. 188 (1969), which said that a "felony murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included in fact within the offense charged." *Id.* at 539, 450 P.2d at 590, 75 Cal. Rptr at 198 (1969). *Ireland* applied this principle where the felonious assault and the homicide were committed against the same victim. The Court held that defendant could not be convicted of first-degree murder on the theory that the felonious assault which resulted in death was the underlying felony.

This Court has previously declined to apply *Ireland* in the context of a murder committed when defendant fired into an occupied dwelling; and, relying on earlier precedents, we held the defendant could be convicted of first-degree felony murder when the underlying felony was firing into an occupied dwelling. *State v. Wall,* 304 N.C. 609, 286 S.E.2d 68 (1982). The Court said that while discharging a firearm into occupied property appeared to be an integral part of the homicide, the legislature clearly intended to include this type of felony when it revised the homicide statute in 1977 to state, without ambiguity, that felony murder included a killing committed during the

commission or attempted commission of a felony "with the use of a deadly weapon." *Id.* at 614, 286 S.E.2d at 72.

*Wall* controls our resolution of this assignment of error. Because it is a felony committed with use of a deadly weapon, an assault with a deadly weapon with intent to kill will support a conviction of first-degree murder under the felony-murder rule where the victim of the felonious assault and the victim of the homicide are different persons.

Defendant argues that applying the felony murder rule to the facts here undercuts the more appropriate doctrine of transferred intent. The doctrine of transferred intent provides:

> [i]t is an accepted principle of law that where one is engaged in an affray with another and unintentionally kills a bystander or a third person, his act shall be interpreted with reference to his intent and conduct towards his adversary. Criminal liability, if any, and the degree of homicide must be thereby determined. Such a person is guilty or innocent exactly as [if] the fatal act had caused the death of his adversary. It has been aptly stated that "The malice or intent follows the bullet."

*State v. Wynn,* 278 N.C. 513, 519, 180 S.E.2d 135, 139 (1971) (citations omitted). The State concedes that the evidence would have supported an instruction on transferred intent, saying, "[t]here are facts . . . which strongly suggest that the real targets were Foster and Hardin, and that Gaddy, having donned Foster's jacket . . . was killed by mistake." Failure to give such an instruction though, the state argues, was beneficial to defendant. The jury found defendant guilty of two felonious assaults having as an essential element an intent to kill. Had the doctrine of transferred intent been submitted to the jury as a basis for the murder conviction, the jury would have had yet another theory upon which to find defendant guilty of first-degree murder on the basis of a specific intent to kill after premeditation and deliberation.

We agree with the State. While the evidence might have support-ed a transferred intent instruction, failure to give it could not have been detrimental to defendant. Defendant's argument that presenting the case to the jury on the theory of transferred intent rather than felony murder might have resulted in a verdict of second-degree, rather than first-degree, murder is pure speculation. The felony mur-der theory upon which the case was submitted was fully supported by the evidence. Failure to submit the case on a transferred intent theory

that might also have been supported by the evidence gives defendant no cause to complain.

## IV.

**[3]** By another assignment of error, defendant Abraham contends the trial court erred in denying his motion to have three defense witnesses appear unrestrained in civilian clothing. In support of his contention defendant directs the Court to consider the following colloquy which transpired between the trial court and Ms. Berry, defendant's counsel, outside the presence of the jury:

COURT: I understand from earlier conversations that some witnesses may be those individual [sic] who are in custody, so they will be brought over in leg irons since the Sheriff has indicated that they are security risks.

MS. BERRY: Well, your honor, we would take the position that they are not—they have been writ'ed here, so they have no choice about being here. They are not here for any purpose but to take the witness stand and say what they know. They are going to have their orange jumpsuit [sic] on, unlike Mr. Hardin who they presented, not only in street clothes but without any kind of shackles whatsoever. So, I would say respectfully to the Court, that if you look at the records of the two individuals that we are talking about, as far as violence and threats to other people they pale in comparison to Mr. Hardin.

COURT: Mr. Hardin is currently serving time for what, common law robbery?

MS. BERRY: He is serving two consecutive ten year sentences for assault with a deadly weapon with intent to kill inflicting serious injury, breaking and entering, and larceny of a residence, and common law robbery which was reduced from armed robbery, plus a common law robbery from this jurisdiction as well, Your Honor.

COURT: Which—who do you intend to call first from the prison, from the jail?

MS. BERRY: Rollins. . .

COURT: Rollins?

MS. BERRY: Rollins Hunter.

STATE v. ABRAHAM

[338 N.C. 315 (1994)]

COURT: Oh, Rollins Hunter. What is he in custody for?

MS. BERRY: Your Honor, I think he is presently in custody as a habitual felon.

COURT: Habitual felon?

MS. BERRY: Yes. I think he got a fourteen year sentence as a habitual felon.

COURT: He will come in in leg irons. And the other individual who is in jail.

MS. BERRY: He is Willie Beckham, Your Honor. Mr. Butler prosecuted him for the offenses of which he is currently in custody on. My understanding is one is possession of cocaine, that maintaining a dwelling statute, and misdemeanor drug paraphernalia.

COURT: What is his sentence?

MS. BERRY:: I think he got like a five year sentence, Your Honor.

COURT: What is his criminal record?

MR. BUTLER: I don't recall his record, Your Honor. I don't have that with me.

COURT: Sheriff, are you familiar with the record of him—who is the deputy in charge . . . .

BAILIFF: No, sir. We didn't think we would need his record. Anytime that [sic] are charged with a felony, we would like to have the leg irons on them.

COURT: All right.

MS. BERRY: We would just ask the Court to look at this in terms of fairness, and as to what was done for the State as far as their witnesses are concerned.

COURT: Well, of course, the Court has allowed the Defendants to be in here—the defendants are not shackled while they are in the courtroom, and one of them is serving time for an offense of violence. The Court allowed the State's witness, who is also serving time for a crime of violence, to appear in the courtroom with the Deputy sitting right next to him. The Court has allowed the victims to be unshackled while in the courtroom and in street clothes, but I am not going to extend that to anyone else at this time.

STATE v. ABRAHAM

[338 N.C. 315 (1994)]

Ms. BERRY: As a—just from a procedural standpoint, and in terms of fairness, would the Court consider allowing these witnesses to be brought in and placed in the witness chair outside the presence of the jury. They would have to kind of shuffle in with the leg iron shuffle.

COURT: Yes, ma'am. Certainly.

The record thus reveals that Ms. Berry never moved that defense witnesses be permitted to appear in civilian clothes or unrestrained. She requested only that the shackled defense witnesses be placed in the witness chair outside the presence of the jury. The trial court granted this request.

The trial court's approach to the clothing of the various witnesses and parties appears to have been this: It permitted the prosecuting witnesses and the defendants, the parties to the case, to appear in street clothes and unshackled. At the time, both defendants and one of the prosecuting witnesses were incarcerated. It drew the line, however, at witnesses who were neither victims nor defendants out of a legitimate concern for the safety of the courtroom. These kinds of decisions are left to the trial court's discretion. N.C.G.S. § 15A-1031 (1988) (trial court may order witness be subjected to physical restraint in courtroom when judge finds restraint reasonably necessary to provide for safety of persons); cf. State v. Tolley, 290 N.C. 349, 226 S.E.2d 353 (1976). There has been no abuse of that discretion shown here.

Defendant argues that the trial court's decision to allow defense witnesses to appear shackled and in prison uniform was tantamount to expressing an opinion from the bench as to the credibility of these witnesses and, as such, amounted to prejudicial error. In support of this contention, defendant relies on State v. McBryde, 270 N.C. 776, 155 S.E.2d 266 (1967); State v. Simpson, 233 N.C. 438, 64 S.E.2d 658 (1951); and State v. McNeill, 231 N.C. 666, 58 S.E.2d 366 (1950). We find these cases to be distinguishable. In all three cases, the Court found prejudicial error where defense witnesses were arrested in court in the presence of the jury. The defense witnesses here were already in the custody of state penal institutions. Though the witnesses were shackled while in the courtroom, they were placed in, and removed from, the witness chair outside the presence of the jury.

Defendant's assignment of error is overruled.

V.

**[4]** By another assignment of error, defendant contends the trial court erred prejudicially in allowing evidence of a prior assault involving defendants on 26 September 1989. This evidence was offered under Evidence Rule 404(b) to prove the identity of Foster's, Hardin's, and Gaddy's assailants.

State's witness William D. Johnson testified that on the evening of 26 September 1989 he was walking down Tuckaseegee Road in Charlotte with another person when a blue Cadillac passed him. The Cadillac turned around and a man whom Johnson identified as Abraham emerged from behind the car and shot Johnson. Johnson identified the driver of the Cadillac as Cureton. Charlotte Police Officer Joseph V. Lombardo testified that on 26 September 1989 he and Officer A.D. Horton went to Tuckaseegee Road in response to the sound of gunshots. Lombardo searched for evidence at the crime scene and uncovered one bullet and two shell casings. Todd Nordhoff, a firearms and tool examiner with the Charlotte Police Department Crime Laboratory, testified that he examined and compared the casings found at the scene of the 26 September shooting and determined that they came from the same gun as three of the casings found at the 29 November 1989 shooting.

Evidence Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (1992). "The use of evidence as permitted under Rule 404(b) is guided by two constraints: similarity and temporal proximity." *State v. Artis*, 325 N.C. 278, 299, 384 S.E.2d 470, 481 (1989), *judgment vacated*, 494 U.S. 1023, 108 L. Ed. 2d 604, *on remand*, 327 N.C. 470, 397 S.E.2d 223 (1990), *on remand*, 329 N.C. 679, 406 S.E.2d 827 (1991). Insofar as the characteristics of the prior act are unlike those of the offense with which defendant is currently charged, the prior act's probative value is diminished; and when the prior act is similar to the current offense but separated by a long period of time, "commonalities become less striking, and the probative

value of the analogy attaches less to the acts than to the character of the actor." *Id.*

Defendant concedes that a space of two months between the prior act and the current offenses meets the temporal proximity test. He contends, however, that the prior act and the current offenses were not sufficiently similar.

We disagree. This Court recently addressed a like issue in *State v. Garner*, 331 N.C. 491, 417 S.E.2d 502 (1992). In that case the defendant was tried for armed robbery and first-degree murder of Eva Harrelson. The State sought to admit evidence showing the defendant had attempted to murder a taxicab driver three weeks after the murder of Harrelson. Evidence revealed that on both occasions the assailant had used the same gun. The Court found no error in the admission of the evidence, holding that "the evidence concerning the defendant's attempted murder of the taxicab driver three weeks later with the same gun tended to prove the defendant's possession and control of the weapon at a time close in proximity to that of the Harrelson murder." *Id.* at 509, 417 S.E.2d at 512.

In the instant case, several factors are common to the prior assault and the offenses for which defendants were being tried. The casings recovered from the 26 September shooting matched those fired from one of the guns at the 29 November offenses. Thus, there was evidence, as in *Gardner*, tending to show that one of the guns used in both incidents was in the control of defendant Abraham or his confederate. Further, on both occasions witnesses identified defendants Abraham and Cureton in a blue Cadillac on a Charlotte street before they began the respective assaults.

Given the relatively close temporal proximity between the two incidents, we conclude their similarities are sufficient to be probative on the issue of the identity of the assailants in the instant case.

VI.

[5] By a related assignment of error, defendant contends that even if this Court were to hold that evidence of the 26 September assault was properly admitted, the manner in which the evidence was used by the prosecution in closing argument was improper and prejudicial to defendant.

In closing argument the prosecution argued:

STATE v. ABRAHAM

[338 N.C. 315 (1994)]

Why in the world is everybody picking on Tyrone Abraham and Patrick Cureton? Why? Ladies and gentlemen, they're guilty. They're guilty. I mean, you know, they are guilty. The physical evidence supports it. People that don't know each other says [sic] that Abraham's shooting at them. He's in a blue Cadillac, riding around in the cover of darkness, shooting at people, trying to kill people.

Make him stop, ladies and gentlemen. It's time to make him stop because it ain't right. You don't kill people, unprovoked, maliciously, violently—and that's what he did. He killed him. He shot him in the head. He shot him in the foot; he shot him in the body. He killed him worse than a hunter is allowed to go out and kill his game. You can't go out and kill like that. I'd ask, ladies and gentlemen, that you stop him.

At trial defendant raised no objection to the argument. Defendant now contends, however, that the prosecutor's argument was a "broadside attack" on defendant's character, culminating in an inflammatory plea to the jury to "make him stop."

The law regarding arguments of counsel is well established: Counsel must be allowed wide latitude in arguing hotly contested cases. *State v. Wilson*, 335 N.C. 220, 225, 436 S.E.2d 831, 834 (1993); *State v. Covington*, 317 N.C. 127, 343 S.E.2d 524 (1986); *State v. Williams*, 314 N.C. 337, 333 S.E.2d 708 (1985). Counsel may argue the facts in evidence together with all reasonable inferences that may be drawn therefrom in presenting counsel's side of the case. *State v. Gibbs*, 335 N.C. 1, 64, 436 S.E.2d 321, 357 (1993), *cert.* denied, —— U.S.——, 129 L. Ed. 2d 881 (1994). Whether counsel has abused this right is a matter ordinarily left to the sound discretion of the trial court. *Wilson*, 335 N.C. at 225, 436 S.E.2d at 834. Where defendant fails to object to an alleged impropriety in the State's argument and so flag the error for the trial court, "the impropriety . . . must be gross indeed in order for this court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it." *State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979); *accord State v. Taylor*, 337 N.C. 597, 447 S.E.2d 360 (1994).

We have carefully reviewed the prosecutor's argument, taking heed of those portions to which defendant now assigns error. We conclude there was no error, much less any gross impropriety.

Prior to its comments regarding the 26 September assault, the prosecution advised the jury that the evidence surrounding this incident was properly admitted at trial for the limited purpose of showing identity. Therefore, it was not improper for the prosecution to reference the 26 September shooting in conjunction with the current offense and emphasize the similarities between the two incidents, such as the fact that a blue Cadillac had been identified on both occasions. Nor was it improper for the prosecution to note that different and unrelated witnesses had testified that defendant Abraham had on separate occasions assaulted them with a deadly weapon in order to help the State prove the identity of the assailants who were on trial.

As for the prosecution's request of the jury to "make him stop," this argument was an appeal by the prosecution to convict defendant to deter his assaultive behavior. While the prosecution may not argue the effect of defendant's conviction on others, i.e., general deterrence, the prosecution may argue specific deterrence, that is, the effect of conviction on defendant himself. *State v. Syriani*, 333 N.C. 350, 397, 428 S.E.2d 118, 144 (1993) (specific deterrence argument, "the only way to insure he won't kill again is the death penalty," not improper), *cert. denied*, —— U.S. ——, 126 L. Ed. 2d 341 (1993), *reh'g denied*, —— U.S. ——, 126 L. Ed. 2d 707 (1994); *State v. Zuniga*, 320 N.C. 233, 268-69, 357 S.E.2d 898, 920-21 (specific deterrence argument, "Justice is making sure that [defendant] is not ever going to do this again," not improper), *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384 (1987), *denial of post-conviction relief rev'd*, 336 N.C. 508, 444 S.E.2d 443 (1994).

The prosecution's closing argument being without error, defendant's assignment of error to it is overruled.

VII.

[6] Defendant next contends the trial court erred in allowing the State to amend the bill of indictment to allege an assault against Joice Hardin rather than Carlose Antoine Latter, as the original indictment charged, on the ground the change in the name fundamentally altered the nature of the charge against defendant, depriving him of the right to be tried only upon a bill of indictment returned by a grand jury. We agree and hold the judgment against defendant for assault with a deadly weapon with intent to kill Joice Hardin must be arrested.

It is well settled that "a valid bill of indictment is essential to the jurisdiction of the trial court to try an accused for a felony." *State v. Sturdivant*, 304 N.C. 293, 308, 283 S.E.2d 719, 729 (1981). Whether or

not to return a true bill of indictment is within the sole province of the grand jury. *State v. Thomas*, 236 N.C. 454, 73 S.E.2d 283 (1952).

Where an indictment charges the defendant with a crime against someone other than the actual victim, such a variance is fatal. *State v. Bell*, 270 N.C. 25, 153 S.E.2d 741 (1967). In *Bell*, the indictment charged defendant with the robbery of Jean Rogers, whereas the evidence showed the correct name of the victim was Susan Rogers. The Court held that the defendant's motion for nonsuit should have been allowed as to the indictment on the ground that the indictment was in variance with the evidence. 270 N.C. at 29, 153 S.E.2d at 745. In *State v. Overman*, 257 N.C. 464, 125 S.E.2d 920 (1962), the indictment charged that Frank E. Nutley, rather than Frank E. Hatley, was victim of a hit-and-run accident. Because the indictment required the State to prove injury to someone other than the true victim, the Court held a fatal variance existed. *Id.* at 468, 125 S.E.2d at 924. *See State v. Harper*, 64 N.C. 129, 131 (1870) ("A variance or omission in the name of the person injured is more serious than a variance in the name of the defendant . . . .")

Here the indictment returned by the grand jury charged defendant with assault with a deadly weapon with intent to kill Carlose Antoine Latter. Hardin apparently gave this false name to law enforcement officials investigating the 29 November incident. Defendant moved to dismiss the indictment, contending it charged an assault against someone other than the actual victim. The trial court denied the motion and, over defendant's objection, allowed the State to amend the indictment to charge that Joice Hardin was the victim of the assault.

A bill of indictment may not be amended. N.C.G.S. § 15A-923(e) (1988); *State v. Haigler*, 14 N.C. App. 501, 188 S.E.2d 586, *cert. denied*, 281 N.C. 625, 190 S.E.2d 468 (1972) (once returned as a true bill by grand jury, neither court nor prosecution has authority to amend indictment's substance). This Court has interpreted prohibited amendments to mean "any change in the indictment which would substantially alter the charge set forth in the indictment." *State v. Price*, 310 N.C. 596, 598, 313 S.E.2d 556, 558 (1984); *compare State v. Brinson*, 337 N.C. 764, 448 S.E.2d 822 (1994) (amendment to indictment proper). A change in the name of the victim substantially alters the charge in the indictment. Therefore, the trial court was without authority to allow the amendment.

Where the indictment and the proof are at variance, as is the case here, the trial court should dismiss the charge stemming from the flawed indictment and grant the State leave to secure a proper bill of indictment. *Overman,* 257 N.C. at 468, 125 S.E.2d at 924; *Bell,* 270 N.C. at 29, 153 S.E.2d at 745.

We, therefore, arrest judgment as to defendant Abraham's conviction for assault with a deadly weapon with intent to kill committed against Joice Hardin, 90-CRS-76544,[1] and remand this matter to the trial court for further proceedings consistent with our holdings in *Bell* and *Overman.*

### Defendant Cureton

### VIII.

[7] Defendant Cureton first contends the trial court committed reversible error by removing potential juror Hinson for cause. Defendant argues the *voir dire* did not reveal that juror Hinson was unfit to serve, the trial court's examination of juror Hinson evidenced a bias against the juror, and defendant should have been permitted to rehabilitate the juror before her removal.

During jury selection, juror Hinson was questioned as to whether she would abide by the law, weigh all the evidence at trial and disregard outside influences. Juror Hinson expressed a willingness to do so. The prosecution then asked her if she would require defendant to present evidence in his behalf. The following transpired:

MR. BUTLER: Would you require—during the guilt/innocence phase of this hearing, would you require the defendants to put on any evidence before you felt like you could reach a verdict?

MS. HINSON: No.

MR. BUTLER: Would you require the defendants to testify or to put on evidence, put on witnesses?

MS. HINSON: I would like to have the background behind it.

MR. BUTLER: But if they did put on any evidence, do you feel like you could sit and make up your own mind and make a decision in this case?

---

1. We note that the conviction against defendant Cureton for assault with a deadly weapon with intent to kill Hardin, 90-CRS-37546, suffers from the same fatal defect as the corresponding conviction against defendant Abraham, 90-CRS-37544. Judgment, however, was arrested by the trial court at sentencing, thereby eliminating any prejudice to defendant Cureton resulting from the flawed indictment.

Ms. HINSON: I would wonder—I mean, I know the witnesses would testify, but I would still wonder what made them do it. I would like to hear their side of the story.

MR. BUTLER: So you are telling me that you would require them to testify?

Ms. HINSON:: I would like to hear their side of the story.

MR. BUTLER: If Your Honor please, the State would challenge Ms. Hinson for cause.

COURT: In other words, while you would like to hear their side of the story, do you understand that in the guilt/innocence phase they are not required to take the stand?

Ms. HINSON: Yes.

COURT: Could you put that out of your mind and not require them to take the stand . . .

Ms. HINSON: I would not require it.

COURT: Beg your pardon.

Ms. HINSON: I would not require it.

COURT: Well, would your curiosity weigh into the prejudice of the defendants in any fashion while you deliberated on whether or not they were guilty or not guilty?

Ms. HINSON: It might.

COURT: The challenge is granted.

MR. BENDER [Defense Counsel]: Your Honor, may I examine this juror?

COURT: No, sir. This juror is excused. Thank you ma'am.

. . . .

Ms. BERRY [Defense Counsel]: If the Court will note our objections to the excusal of Ms. Hinson.

COURT: Noted.

The excusal of the juror was proper. N.C.G.S. § 15A-1212(9) of the North Carolina General Statutes provides that, "[a] challenge for cause to an individual juror may be made by any party on the ground that the juror . . . is unable to render a fair and impartial verdict."

**STATE v. ABRAHAM**

[338 N.C. 315 (1994)]

N.C.G.S. § 15A-1212(9) (1988). The granting of a challenge for cause where the juror's fitness or unfitness is arguable is a matter within the sound discretion of the trial court and will not be disturbed absent a showing of abuse of discretion. *State v. Cunningham*, 333 N.C. 744, 753, 429 S.E.2d 718, 723 (1993); *State v. Hightower*, 331 N.C. 636, 417 S.E.2d 237, 240 (1992); *State v. Quick*, 329 N.C. 1, 17, 405 S.E.2d 179, 189 (1991); *State v. Watson*, 281 N.C. 221, 227, 188 S.E.2d 289, 293, *cert. denied*, 409 U.S. 1043, 34 L. Ed. 2d 493 (1972). However, " 'in a case . . . in which a juror's answers show that he could not follow the law as given . . . by the judge in his instructions to the jury, it is error not to excuse such a juror.' " *Cunningham*, 333 N.C. at 754, 429 S.E.2d at 723 (quoting *State v. Hightower*, 331 N.C. at 636, 417 S.E.2d at 240).

In *Hightower*, this Court found error in the trial court's denial of a challenge for cause to a juror who stated on *voir dire* that defendant's failure to testify during the trial for first-degree murder would "stick in the back of my mind." *Hightower*, 331 N.C. at 641, 417 S.E.2d at 240. Although the juror ultimately stated he would endeavor to follow the law despite the defendant's failure to testify, the Court concluded that defendant's challenge for cause should have been granted. In so holding, the Court stated: "We can only conclude from the questioning of this juror that he would try to be fair to the defendant but might have trouble doing so if the defendant did not testify." *Id.* In *Cunningham*, we likewise found error in the trial court's denial of a challenge for cause to a juror whose responses on *voir dire* indicated that although she recognized the burden of proof was on the State, she would still expect the defense to prove defendant Cunningham's innocence. *Cunningham*, 333 N.C. at 748, 429 S.E.2d at 720. The Court held the juror's responses demonstrated "either confusion about, or a fundamental misunderstanding of, the principles of the presumption of innocence or a simple reluctance to apply those principles should the defense fail to present evidence of defendant's innocence." *Id.* at 754, 429 S.E.2d at 723. The Court further held that "[w]hether [the juror's] reluctance to give defendant the benefit of the presumption of innocence was caused by confusion regarding the law, a misunderstanding of the law or a reluctance to apply the law as instructed, its effect on her ability to give defendant a fair trial remained the same." *Id.*

Under *Hightower* and *Cunningham* it would likely have been error for the trial court not to have excused juror Hinson for cause. We find, therefore, no error in the excusal.

**STATE v. ABRAHAM**

[338 N.C. 315 (1994)]

Even if the excusal had been erroneous, defendant has not demonstrated that it was prejudicial. "A defendant is not entitled to any particular juror. His right to challenge is not a right to select but to reject a juror." *State v. Wesley Thomas Harris*, 338 N.C. 211, 227, 449 S.E.2d 462, 470 (1994).[2]

Defendant's contention that the trial court's questioning of juror Hinson evidenced a bias against the juror is feckless. "The primary goal of the jury *voir dire* is to ensure that only those persons are selected to serve on the jury who could render a fair and impartial verdict." *State v. Kennedy*, 320 N.C. 20, 26, 357 S.E.2d 359, 363 (1987). The trial court's examination was conducted in a manner intended to ensure this guaranty. The questions were limited in scope to juror Hinson's desire to hear defendant's account of the incident.

Defendant lastly contends he was wrongfully denied the opportunity to rehabilitate juror Hinson.

When challenges for cause are supported by prospective jurors' answers to questions propounded by the prosecutor and by the court, the court does not abuse its discretion, at least in the absence of a showing that further questioning by defendant would likely have produced different answers, by refusing to allow the defendant to question the juror challenged [about the same matter].

*State v. Oliver*, 302 N.C. 28, 40, 274 S.E.2d 183, 191 (1981), *quoted in State v. McCollum*, 334 N.C. 208, 234, 433 S.E.2d 144, 158 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 895, *reh'g denied*, —— U.S. ——, 129 L. Ed. 2d 924 (1994). In this case the prosecution's challenge of juror Hinson was supported by her responses to questions by both the prosecution and the trial court, in which she made it clear the defendants' failure to testify might prejudice them in her deliberation. Nothing in the record indicates that additional proper questioning would have resulted in different responses. *McCollum*, 334 N.C. at 234, 433 S.E.2d at 158. Nor was there any showing by defendant, who did not request to examine the juror until after her excusal, that further questioning by him would likely have produced different answers.

This assignment of error is overruled.

---

2. The improper excusal of a single juror for cause may be reversible error per se as to the sentence only where a jury returns a verdict of death and the excusal was improper under the principles of *Witherspoon v. Illinois*, 391 U.S. 510, 20 L. Ed. 2d 776, *reh'g denied*, 393 U.S. 898, 21 L. Ed. 2d 186 (1968), and *Wainwright v. Witt*, 469 U.S. 412, 83 L. Ed. 2d 841 (1985). *See State v. Rannels*, 333 N.C. 644, 655, 403 S.E.2d 254, 260 (1993). This rule has its roots in the United States Supreme Court's Eighth Amendment jurisprudence.

IX.

[8] Defendant Cureton was convicted of feloniously assaulting with a deadly weapon with intent to kill the victim Hardin. He was convicted of the same crime against the victim Foster on a theory of acting in concert with defendant Abraham as to this assault. Cureton contends the trial court's instruction on acting in concert violated his state and federal constitutional rights by allowing the jury to find him guilty of assaulting Foster with a deadly weapon with intent to kill and, thereby, of first-degree felony murder of Gaddy, without determining whether he, himself, ever formed the requisite specific intent to kill Foster. Cureton contends the instructions allowed the jury to apply the principle of acting in concert to convict him of the felonious assault against Foster solely on the specific intent to kill of defendant Abraham.

Important to our resolution of this issue is that defendant Cureton failed to object at trial to the instruction now complained of. He has, therefore, waived his right to appellate review of the instruction except under the "plain error" standard. N.C. App R. 10(c)(4); *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983). To order a new trial for instructional error under the plain error standard of review requires that the error be so fundamental that defendant, in light of the evidence, the issues and the instructional error, could not have received a fair trial.

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," ·or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Erlewine*, 328 N.C. 626, 636, 403 S.E.2d 280, 285 (1991) (quoting *Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982))), *modified on other grounds, State v. Blankenship*, 337 N.C. 543, 447 S.E.2d 727 (1994).

Under the doctrine of acting in concert, where a single crime is involved, one may be found guilty of committing the crime if he is at the scene acting together with another with whom he shares a common plan to commit the crime, although the other person does all the acts necessary to effect commission of the crime. *State v. Blankenship*, 337 N.C. 543, 558, 447 S.E.2d 727, 736 (1994); *State v. Jeffries*, 333 N.C. 501, 512, 428 S.E.2d 150, 156 (1993); *State v. Laws*, 325 N.C. 81, 97, 381 S.E.2d 609, 618 (1989), *judgment vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990), *on remand*, 328 N.C. 550, 402 S.E.2d 573, *cert. denied*, —— U.S. ——, 116 L. Ed. 2d 174 (1991). Under this doctrine, where multiple crimes are involved, when two or more persons act together in pursuit of a common plan, all are guilty only of those crimes included within the common plan committed by any one of the perpetrators. *Blankenship*, 337 N.C. at 558, 447 S.E.2d at 736 (citing *State v. Joyner*, 297 N.C. 349, 255 S.E.2d 390 (1979)). As a corollary to this latter principle, one may not be criminally responsible as an accomplice under the theory of acting in concert for a crime which requires a specific intent, unless he, himself, is shown to have the requisite specific intent. *Id.* The specific intent may be proved by evidence tending to show that the specific intent crime was a part of the common plan. *Id.* "Although a common plan for all crimes committed may exist at the outset of the criminal enterprise, its scope is not invariable; and it may evolve according to the course of events." *Id.* Thus, where a series of crimes is involved, all being part of the course of criminal conduct, the common plan to commit any one of the crimes may arise at any time during the conduct of the entire criminal enterprise. *Id.* In other words, one may not be found guilty of a crime requiring a specific intent under the acting in concert doctrine unless the crime was part of the common purpose or the specific intent on the part of the one sought to be charged is independently proven.

We have carefully reviewed the trial court's acting in concert instructions as they apply to Cureton's conviction of felonious assault with intent to kill of Foster. We assume, *arguendo*, that the jury might have interpreted these instructions to permit convicting Cureton of this assault on the basis of the specific intent to kill harbored by defendant Abraham and without finding such a specific intent independently on the part of Cureton. We are also cognizant, as defendant Cureton points out, that the instructions allowed him to be convicted of first-degree felony murder of Gaddy on the basis of his participa-

tion in the felonious assault of either Foster or Hardin. We are nevertheless satisfied that no plain error was committed.

First, as to the felonious assault of Foster, the instructions required the jury to find that: Abraham intentionally assaulted Foster by shooting at him; Abraham used a deadly weapon; Abraham had the specific intent to kill Foster; and Cureton acted together with Abraham by being present at the scene and giving active encouragement to Abraham or, by his conduct, making known to Abraham that he was standing by to lend assistance. The instructions did not, however, require that Abraham and Cureton share a common purpose in the assault of Foster.

Second, the jury found Cureton guilty himself of feloniously assaulting Hardin with the specific intent to kill Hardin by shooting at Hardin. Both felonious assaults occurred at the same time with both defendants shooting simultaneously at or in the direction of their victims.

Because of the instructions which the jury was given and because the jury convicted Cureton of felonious assault of Hardin with intent to kill, it is inconceivable that the jury would not have found that Cureton shared with Abraham a common purpose to assault Foster with the specific intent to kill had the jury been clearly instructed that such a finding was required. We are confident that failure to give such an explicit instruction had no effect on the outcome of the trial and the outcome would have been the same had the instruction been given. There has, therefore, been no denial of a fair trial or fundamental right and no fundamental error resulting in a miscarriage of justice by the instructions given and not given in this case. In short, there has been no plain error in the trial court's instructions on acting in concert.

Defendant Cureton's assignment of error on this issue is overruled.

### X.

[9] Defendant Cureton next contends the trial court erred in denying his motion for an expert on eyewitness identification. In *Ake v. Oklahoma*, 470 U.S. 68, 84 L. Ed. 2d 53 (1985), the United States Supreme Court held that "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot other-

wise afford one." *Id.* at 74, 84 L. Ed. 2d at 60. *See also Caldwell v. Mississippi*, 472 U.S. 320, 86 L. Ed. 2d 231 (1985). While *Ake* dealt specifically with expert psychiatric assistance in the evaluation of the defendant, its rationale has been extended to other areas of expert assistance. *State v. Moore*, 321 N.C. 327, 364 S.E.2d 648 (1988) (fingerprint expert); *State v. Penley*, 318 N.C. 30, 347 S.E.2d 783 (1986) (pathologist); State v. Johnson, 317 N.C. 193, 344 S.E.2d 775 (1986) (medical expert); *State v. Hickey*, 317 N.C. 457, 346 S.E.2d 646 (1986).

Pursuant to *Ake*, and subsequent state court decisions under *Ake*, defendant is required to make " 'an ex parte threshold showing' that the matter subject to expert testimony is 'likely to be a significant factor' in the defense." *Moore*, 321 N.C. at 344, 364 S.E.2d at 656-57. Defendant must show that an expert would assist him materially in the preparation of his defense or that the denial of expert assistance would deprive him of a fair trial. *Moore*, 321 N.C. at 344, 364 S.E.2d at 656-57; *Penley*, 318 N.C. at 52, 347 S.E.2d at 795.

We find defendant has failed to show how an expert would have assisted him materially. His pretrial motion was based solely on his perceived need to show the unreliability of the identification of defendants at the 26 September 1989 shooting. Defendant argued an eyewitness identification expert would assist in showing the jury the unreliability of this identification because of factors such as the time of observation, the distance of observation and the age of the eyewitnesses. Defendant noted certain inconsistencies between the accounts of the 26 September incident and the limited opportunity the witness had to view defendants.

This is not a case involving the uncorroborated identification of a single eyewitness. Both defendants had been identified by a number of witnesses who knew them, including the victims Foster and Hardin. Defendants' presence at the scene of the shooting seemed not to be a major issue at trial. Regarding the 26 September incident, identification by the victim William Johnson of defendants was corroborated by his observance of the blue Cadillac common to both incidents and by the ballistics evidence of bullet casings matching casings found at the 29 November crime scene.

Further, the identification issues for which defendant Cureton sought expert assistance involved matters within the scope of the jury's general capability and understanding. *See State v. Jackson*, 320 N.C. 452, 460, 358 S.E.2d 679, 683 (1987) (expert's testimony only admissible where it informs jury about matters not within full under-

standing of lay persons). Defendant had opportunity during cross-examination, which he exercised, to emphasize any inconsistencies in testimony as well as to underscore other factors such as lighting conditions or distance which would have affected the accuracy or credibility of the identifications. The assistance of an expert would have been of marginal additional value as to these points.

Defendant further contends an expert in eyewitness identification would have afforded him a mechanism for conveying to the jury the unreliability of Hardin's testimony. Defendant argues an expert would have provided specialized knowledge necessary to understand and evaluate Hardin's testimony in light of Hardin's use of alcohol, marijuana and cocaine on the evening of the incident, his previous false statements to police and his apparently limited mental capacity. No such argument, however, was presented at the motion hearing.

Based on defendant's showing at trial, we conclude the trial court acted properly in denying defendant's motion for an expert in eyewitness identification. No particularized need for an identification expert was demonstrated. Indeed, to require such an expert in this case would mean entitlement to an identification expert in every case where eyewitness identification evidence is offered no matter how crucial or strongly corroborated the identification.

This assignment of error is overruled.

XI.

**[10]** Defendant Cureton next contends he was unfairly prejudiced because of the substantial amount of time the State devoted to developing the 26 September incident. This contention has no merit.

As we have already stated, evidence concerning this 26 September incident was admissible as evidence of other crimes, wrongs or acts under Rule 404(b) tending to identify both defendants as the assailants at the 29 November 1989 shooting. In developing this evidence the State questioned only one eyewitness—victim William Deone Johnson. The State elicited testimony from various other witnesses solely to describe the chain of custody and later examination of the casings found at the scene of the 26 September shooting. While this evidence was prejudicial to defendant Cureton, it was not unfairly so.

*State v. Cashwell*, 322 N.C. 574, 369 S.E.2d 566 (1988), relied on by defendant Cureton, does not control this issue. In *Cashwell*, the

defendant was convicted upon two charges of first-degree murder. At trial the State elicited evidence regarding the defendant's prior assault on his girlfriend. The Court found the evidence inadmissible under Rule 404(b) because it was relevant only as to the character of the accused. In the instant case, the purpose of the evidence was not to show defendant Cureton's character.

## XII.

[11] Defendant Cureton next contends he was deprived of a fair trial by the trial court's denial of his motion to sever his trial from that of defendant Abraham.

N.C.G.S. § 15A-926(b)(2)(a) provides for joinder of defendants where the State seeks to hold the defendants accountable for the same offenses. *State v. Pickens*, 335 N.C. 717, 724, 440 S.E.2d 552, 556 (1994); N.C.G.S. § 15A-926(b)(2)(a) (1988). Objections to joinder and motions to sever are governed by N.C.G.S. § 15A-927(c)(2), which provides,

> (c) Objection to Joinder of Charges against Multiple Defendants for Trial; Severance.
>
> . . . .
>
> (2)    The court, on motion of the prosecutor, or on motion of the defendant other than under subdivision (1) above must deny a joinder for trial or grant a severance of defendants whenever:
>
>      (a)   If before trial, it is found necessary to protect a defendant's right to a speedy trial, or it is found necessary to promote a fair determination of the guilt or innocence of one or more defendants; or
>
>      (b)   If during trial, upon motion of the defendant whose trial is to be severed, or motion of the prosecutor with the consent of the defendant whose trial is to be severed, it is found necessary to achieve a fair determination of the guilt or innocence of that defendant.

N.C.G.S. § 15A-927(c)(2) (1988). "[T]he trial court must deny a joinder for trial or grant a severance whenever it is necessary to promote a fair determination of the guilt or innocence of one or more defendants." *Pickens*, 335 N.C. at 724, 440 S.E.2d at 556.

Here the evidence clearly supports consolidation of defendants' trials and the trial court's refusal to grant this defendant's motion to sever. Defendants were charged with the same offenses all of which

the evidence tended to show arose out of a common scheme and were part of the same transaction.

Although defendant argues that in a separate trial evidence of the 26 September shooting could not have been admitted against him, we have already concluded this evidence was admissible under Evidence Rule 404(b) on the issue of identity. Were defendant Cureton to have been tried alone, this evidence would have been admissible against him on this issue. The defenses of Abraham and Cureton were not antagonistic. Severance, therefore, was not required to promote a fair determination of defendant's guilt or innocence. There was no error in the trial court's denial of defendant Cureton's motion to sever.

## XIII.

[12] Defendant Cureton next contends the trial court erred by precluding him from fully impeaching certain State's witnesses.

He first argues the trial court erroneously denied his pretrial request to have State's witness Joice Hardin undergo mental examination. We do not agree. A trial judge does not have the authority to compel a witness to submit to a psychiatric examination. *State v. Horn*, 337 N.C. 449, 451-52, 446 S.E.2d 52, 53 (1994); *State v. Liles*, 324 N.C. 529, 534, 379 S.E.2d 821, 823 (1989); *State v. Clontz*, 305 N.C. 116, 286 S.E.2d 793 (1982); *State v. Looney*, 294 N.C. 1, 240 S.E.2d 612 (1978). In *Looney*, we said:

> [T]he possible benefits to an innocent defendant, flowing from such a court ordered examination of the witness, are outweighed by the resulting invasion of the witness' right to privacy and the danger to the public interest from discouraging victims of crime to report such offenses and other potential witnesses from disclosing their knowledge of them.

*Id.* at 28, 240 S.E.2d at 627.

[13] Defendant argues the trial court erroneously prevented him from impeaching Hardin with damaging statements contained in the transcript of plea regarding Hardin's prior convictions. At trial, defense counsel sought to question Hardin regarding charges of breaking or entering, larceny and assault with a deadly weapon inflicting serious bodily injury, all of which had been the subject of a plea arrangement. Counsel sought to question Hardin about five guns he had allegedly stolen during the commission of these offenses. Counsel also sought to question Hardin regarding his plea of guilty to

felonious assault, during which a .25-caliber handgun was used, to show Hardin was in possession of a .25-caliber weapon less than 30 days prior to the 29 November shooting. At trial, counsel contended this evidence bore on Hardin's lack of character for peacefulness and should have been allowed under Evidence Rule 404(a)(2), which provides:

> (a) *Character evidence generally.*—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
>
> . . . .
>
> (2) *Character of victim.*—Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor.

N.C.G.S. § 8C-1, Rule 404(a)(2) (1992).

The trial court ruled that inquiry into the details of Hardin's prior charges was inadmissible under Evidence Rule 403, which provides that evidence, although relevant, may be excluded where any "probative value is substantially outweighed by unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403 (1992). Whether or not to exclude evidence under this rule is a matter within the sound discretion of the trial court, reversible only upon a showing that the ruling was arbitrary and unsupported by reason. *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986).

Defendant has the burden on appeal of demonstrating that these rulings were incorrect. *State v. Milby*, 302 N.C. 137, 141, 273 S.E.2d 716, 719 (1981). Defendant has failed to carry this burden. The Official Commentary to Rule 404 states:

> Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and to

punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.

N.C. R. Evid. 404 official commentary (quoting Fed. R. Evid. 404 advisory committee's note). Given the issues raised at trial to support the cross-examination at issue, it had little, if any, probative value. There was no claim of self-defense in the instant case. Hence the aggressiveness, if any, of the victims was not really an issue.

On appeal, however, defendant contends that inasmuch as Hardin denied being armed at the 29 November shooting, this cross-examination should have been allowed to impeach his credibility and to establish bias. Even had this theory been urged at trial to sustain the cross-examination, which it was not, we think the trial court would have been well within its discretion to sustain objection under Rule 403. That a .25-caliber weapon may have been used by Hardin in the commission of an earlier felonious assault has slight bearing, if any, on whether he was armed during the 29 November 1989 shooting.

[14] Defendant Cureton next argues the trial court impermissibly precluded efforts to question Darryl Foster regarding his prior illegal or bad acts to demonstrate his lack of credibility. Trial counsel attempted to impeach Foster by having him admit that, pursuant to his plea to a drug offense, a charge of larceny of an automobile was dismissed. The trial court sustained the State's objection. The trial court also precluded defense counsel from questioning Foster about a pending warrant for Foster's arrest for possession of a firearm without a license in New Jersey on 3 June 1989. When trial counsel asked State's witness Johnson whether there were any charges pending against him when counsel interviewed Johnson regarding the 26 September 1989 shooting, the trial court sustained the State's objection. All rulings were clearly correct. *State v. Jones*, 329 N.C. 254, 404 S.E.2d 835 (1991) (error to allow cross-examination concerning mere charges of crime); *see also* N.C.G.S. § 8C-1, Rules 608 and 609.

## XIV.

[15] By his next assignment of error, defendant Cureton contends the trial court abused its discretion by denying the jury's request for copies of the transcript of trial testimony. Defendant argues he was prejudiced by this ruling because the trial court did allow the jury to review in the jury room many pretrial statements which defendant contends were inconsistent with and noncorroborative of the testi-

mony of several key witnesses for the State. We think the trial court ruled correctly.

N.C.G.S. § 15A-1233(a) provides:

> If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. In his discretion the judge may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

N.C.G.S. § 15A-1233(a) (1988). Here the jury, during deliberation, returned a written request stating, "Can we get copies of the transcripts?" The trial court responded, "It is not possible for you to have transcripts to take into the jury room. You are going to have to rely on your individual, and collective recollection as to what transpired." While N.C.G.S. § 15A-1233(a) gives the trial court the discretion to permit the jury to reexamine writings that have been received into evidence and to rehear specific parts of trial testimony, it does not give the trial court authority, discretionary or otherwise, to provide copies of trial transcripts to jurors.

Defendant relies on three Supreme Court cases for the proposition that it was error for the trial court not to honor the jury's request. *State v. Hudson,* 331 N.C. 122, 415 S.E.2d 732 (1992), *cert. denied,* —— U.S. ——, 122 L. Ed. 2d 136, *reh'g denied,* —— U.S. ——, 122 L. Ed. 2d 776 (1993); *State v. Ashe,* 314 N.C. 28, 331 S.E.2d 652 (1985); *State v. Lang,* 301 N.C. 508, 272 S.E.2d 123 (1980). These are distinguishable. In all three cases the juries returned requests to review portions of the transcript. This Court found error in all three cases on the ground that the trial courts violated N.C.G.S. § 15A-1233 by informing the juries that the transcripts were unavailable without exercising discretion in determining whether to have those portions of the testimony *read* to the jury. In the instant case, the jury requested copies of the entire transcript for use during deliberation in the jury room. The trial court properly denied the request.

Simultaneously with the request for copies of the transcript, the jury requested to view exhibits in the jury room. That the trial court allowed this request did not prejudice defendant. N.C.G.S. § 15A-1233(b) provides:

Upon request by the jury and with the consent of all parties, the judge may in his discretion permit the jury to take to the jury room exhibits and writings which have been received in evidence. If the judge permits the jury to take to the jury room requested exhibits and writings, he may have the jury take additional material or first review other evidence relating to the same issue so as not to give undue prominence to the exhibits or writings taken to the jury room. If the judge permits an exhibit to be taken to the jury room, he must, upon request, instruct the jury not to conduct any experiments with the exhibit.

N.C.G.S. § 15A-1233(b). Here while trial counsel initially objected to the jury's examination of the exhibits in the jury room, counsel subsequently informed the court that it had withdrawn its objection. The court then stated, and defense counsel agreed, that "neither the State nor the Defendants have any objections to the jurors examining the exhibits as requested." Thus the trial court granted the jury's request to review the exhibits in the jury room only after both parties consented. Such a ruling was within the sound discretion of the trial court and was in full compliance with N.C.G.S. § 15A-1233(b). This assignment of error is overruled.

XV.

[16] By his next assignment of error, defendant Cureton contends the trial court erred by admitting the out-of-court statements of Joice Hardin and Herman Meeks.

At trial Barbara Meeks testified that in the early morning of 29 November 1989 Foster and "Pit" (Hardin's street name) knocked on her door. Ms. Meeks testified that upon answering the door, Foster and Hardin entered and Hardin said, "Tari has been assassinated by Tyrone." Defense counsel objected on the grounds that the statements were hearsay and noncorroborative. The trial court overruled the objection and instructed the jury that the statements were offered for no other purpose than to corroborate what Hardin and Foster said at trial.

Also at trial Herman Meeks testified that he was awakened in the early morning of 29 November by Hardin and Foster and that Hardin told him: "[H]e was running away from the scene of the shooting, as he was running away, he could see out of the corner of his eye. Mr. Abraham and Mr. Cureton was [sic] shooting, both of them." The State offered a prior written statement of Mr. Meeks to corroborate

his testimony. In the statement, Mr. Meeks had written, "Pit also told me that Tyrone and Pat had done the killing." Trial counsel objected on the ground that the statement was noncorroborative hearsay and argued that the statement should be redacted from the written statement. The trial court denied the objection and admitted the statement into evidence. It then reinstructed the jury on the admissibility of corroborating evidence, advising the jury that the statement must not be considered for the truth of what was said at the earlier time.

Assuming arguendo that these out-of-court statements were inadmissible hearsay because they went so far beyond the witness' in-court testimony as not to be corroborative but to add additional hearsay evidence, defendant has not shown this to be prejudicial error. This Court previously has held "[t]he erroneous admission of hearsay, like the erroneous admission of other evidence, is not always so prejudicial as to require a new trial." *State v. Ramey*, 318 N.C. 457, 470, 348 S.E.2d 566, 574 (1986); *State v. Blackstock*, 314 N.C. 232, 236, 333 S.E.2d 245, 248 (1985) (every impropriety by trial judge does not necessarily result in prejudicial error). N.C.G.S. § 15A-1443(a) of the North Carolina General Statutes provides:

> A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant. Prejudice also exists in any instance in which it is deemed to exist as a matter of law or error is deemed reversible per se.

N.C.G.S. § 15A-1443(a) 1988. "Whether the judge's comments, questions or actions constitute reversible error is a question to be considered in light of the factors and circumstances disclosed by the record, the burden of showing prejudice being upon the defendant." *Blackstock*, 314 N.C. at 236, 333 S.E.2d at 248.

Here, the record reveals that the State proffered strong and corroborated testimony of two eyewitnesses that both defendant Cureton and Abraham were armed on 29 November 1989 and that they fired their weapons in the direction of Hardin, Foster and Gaddy. According to the State's evidence, Hardin, Foster and Gaddy were unarmed. Casings recovered from the scene of the shooting were determined to have been fired from two guns, one of which had been identified with the defendants at a prior shooting incident. Following

the shooting, Gaddy was found dead in the street where the defendants had been firing. One of the gunshot wounds was to the sole of his foot. This evidence establishes clearly and overwhelmingly that either Cureton or Abraham, acting in concert with the other, shot and killed Gaddy as he attempted to flee. There is no reasonable possibility that a different result would have occurred at trial had the complained-of evidence not been admitted.

This assignment of error is overruled.

## XVI.

[17] Defendant Cureton next contends the trial court denied him a fair trial by permitting the prosecutor to argue prejudicial facts not in evidence. He argues the prosecution improperly attempted to bolster its "weak" case against him by arguing additional corroboration of Hardin's identification of defendant.

At trial the prosecutor made the following argument:

The officer patrols that neighborhood. He knows him when he sees him. At the time he didn't know his name, unlike Officer Klein, who made the arrest a few days later. I believe it was just across the tracks in the same neighborhood that Officer Klein, who patrols that same area, saw him, and he did remember his name. He said, "That's Tyrone Abraham," and he arrested him. Officer Adamo, it wasn't until the next day when he reported for work when the murder was being discussed, and he heard the name Tyrone Abraham, and he said, "That's the man. That's who I saw. I know Tyrone."

The other man was Patrick. I don't know Patrick Cureton. He looked at a photograph, and he said that's Patrick Cureton. That's the man I saw with him.

As noted earlier in our resolution of defendant Abraham's assignment of error regarding the closing argument of the prosecution, section VI of this opinion, it is a matter reserved to the trial court's discretion as to whether counsel has exceeded the wide latitude allowed for arguing hotly contested cases. Where no objection to the argument is made at trial, our review is for gross impropriety.

Defendant Cureton contends the State improperly argued that Adamo determined defendant Cureton was the person he saw in the neighborhood by observing a photograph where the jury had not heard any evidence concerning Adamo's examination of a photo-

graph. Defendant further contends the State improperly argued that Adamo heard defendant's name at work when the trial court previously had sustained an objection to the introduction of the same evidence.

Even if we were to find the State's closing argument improper, we do not believe the claimed error was of such gross impropriety as to warrant intervention by the trial court *ex mero motu.*

"[P]rosecutorial statements are not placed in an isolated vacuum on appeal. Fair consideration must be given to the context in which the remarks were made and to the overall factual circumstances to which they referred." *State v. Pinch,* 306 N.C. 1, 24, 292 S.E.2d 203, 221-22, *cert. denied,* 459 U.S. 1056, 74 L. Ed. 2d 622 (1982), *overruled on other grounds by State v. Wilson,* 322 N.C. 117, 367 S.E.2d 589 (1988), *and overruled on other grounds by State v. Benson,* 323 N.C. 318, 372 S.E.2d 517 (1988). When the State offered evidence in its case-in-chief regarding the process by which Adamo identified Cureton, the trial court sustained defense counsel's objection. The specific testimony to which the trial court sustained objection concerned Adamo's search through the police records section to identify Cureton. Such evidence, were it to have been admitted, would have revealed that defendant Cureton had a prior police record. The State's argument at closing made no reference to Adamo's search of police records. It merely stated that Adamo identified defendant Cureton from a photograph. While there was no evidence at trial concerning a photograph, we fail to see how such an innocuous comment could be deemed grossly improper. This assignment of error is overruled.

## XVII.

[18] By another assignment of error, defendant Cureton contends the trial court committed prejudicial error in overruling defendant's objections to further instructions on first-degree murder and allowing further jury deliberations.

When the jury returned to the courtroom following deliberation, the trial court reviewed the jury's verdict forms. The trial court then sent the jury back to the jury room, and informed counsel that it intended to give the jury further instructions and allow the jury to resume deliberation. As to defendant Cureton, the jury had returned verdicts of guilty of assaulting Hardin with a deadly weapon with intent to kill, of assaulting Foster with a deadly weapon with intent to kill under the theory of acting in concert, of first-degree felony mur-

der, and of second-degree murder under the theory of acting in concert without premeditation and deliberation. Defense counsel requested judgment be imposed on second-degree murder and the two assaults and moved for mistrial. The trial court denied the motions and, over defense counsel's objections, accepted the verdicts against defendant Cureton on the assault charges. It then reinstructed the jury on the murder charge, whereupon the jury, following additional deliberation, returned a verdict of guilty of first-degree felony murder.

The law of this State provides:

A verdict is a substantial right and is not complete until accepted by the court. *State v. Rhinehart*, 267 N.C. 470, 148 S.E.2d 651 (1966). The trial judge's power to accept or reject a verdict is restricted to the exercise of a limited legal discretion. *Davis v. State*, 273 N.C. 533, 160 S.E.2d 697 (1968). In a criminal case, it is only when a verdict is not responsive to the indictment or the verdict is incomplete, insensible or repugnant that the judge may decline to accept the verdict and direct the jury to retire and bring in a proper verdict. Such action should not be taken except by reason of necessity. If the verdict as returned substantially finds the question so as to permit the court to pass judgment according to the manifest intention of the jury, it should be received and recorded. A verdict may be given significance and a proper interpretation by reference to the indictment, the evidence, and the instructions of the court. *State v. Tilley*, 272 N.C. 408, 158 S.E.2d 573 (1968); *State v. Thompson*, 257 N.C. 452, 126 S.E.2d 58 (1962), *cert. denied*, 371 U.S. 921 (1962).

*State v. Hampton*, 294 N.C. 242, 247-48, 239 S.E.2d 835, 839 (1977).

Defendant contends the jury's initial verdicts were not inconsistent in that the verdict signaled that, though the jury considered defendant to have been personally involved, it did not believe defendant possessed the personal intent to kill Gaddy or anyone else. Therefore the trial court should have accepted the jury's verdict of the lesser offense of second-degree murder. The State argues that the verdicts were not confusing, contradictory or incomplete in that they demonstrated that while the jury also found defendant acted with malice but without premeditation and deliberation, thus supporting a conviction of second-degree murder, the jury also found defendant guilty of first-degree felony murder, a crime whose elements are wholly distinct from second-degree murder. Therefore, the State con-

tends the trial court should have entered judgment finding defendant guilty of first-degree felony murder.

The respective positions of the State and defendant amply illustrate the inconsistency and contradictory nature of the verdicts as originally returned. Suffice it to say that a defendant may be convicted of only one degree of homicide for a single murder. He may not be convicted of both first-degree murder and second-degree murder for the same homicide. The trial court properly declined to accept the original verdict and properly reinstructed the jury and directed it to retire and deliberate further. This assignment of error is therefore overruled.

## XVIII.

[19] By his next assignment of error, defendant Cureton contends the trial court committed reversible error by failing to find a violation of its sequestration order based on the prosecutor's alleged joint pretrial conferences with witnesses.

During pretrial proceedings defense counsel moved that witnesses for the State be sequestered. The State made no objection to the motion but requested that the investigating officer be allowed to remain in the courtroom throughout the trial. Defense counsel asked that the investigating officer be sequestered but that he be permitted to remain in the courtroom after he testified. The trial court ruled as follows: "The motion to sequester the State's witnesses is granted except to this extent: one investigating officer may remain during the course of the trial in the courtroom. All State's witness [sic] are to be sequestered." At a later point in the trial, defense counsel argued the State had violated the sequestration order by meeting with several of the State's witnesses at the same time. The State conceded it had met jointly with witnesses Joice Hardin, Darryl Foster, Sharon Whitley, William Johnson and Robin Boyd. The trial court then overruled defense counsel's objection to the introduction of any testimony by these witnesses.

Evidence Rule 615 states: "At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." N.C.G.S. § 8C-1, Rule 615 (1992). In the instant case, the trial court's order, which was in response to defense counsel's motion, contemplated nothing more than the sequestration of witnesses during their testimony. Neither Rule 615 nor the trial court's order precluded

counsel from interviewing witnesses together in preparation for trial. Had this been the intent of the trial court its order would have been more explicit or, we are confident, the trial court would have ruled that the State's actions breached the spirit of the order. It did not do so. This assignment of error is therefore overruled.

## XIX.

[20]  By his final assignment of error, defendant Cureton contends the trial court erred in instructing the jury regarding flight. At the charge conference on 7 February 1991, defense counsel objected to any instruction on flight. The objection was overruled. Thereafter defendant Cureton submitted in writing for the trial court's consideration the North Carolina Pattern Instructions on flight, N.C.P.I.—Crim. 104-35 and 104-36. Pursuant to these pattern instructions, the trial court instructed the jury as follows:

> The State contends that the defendant fled. Evidence of flight may be considered by you together with all other facts and circumstances in this case in determining whether the combined circumstances amount to an admission or show a consciousness of guilt. However, proof of this circumstance is not sufficient, in itself, to establish the defendant's guilt. Further, this circumstance has no bearing on the question of whether a defendant acted with premeditation and deliberation. Therefore, it must not be considered by you as evidence of premeditation or deliberation.

Defendant contends this instruction was error for two reasons: First, it assumed evidence offered by the State showed defendant's flight; and, second, the instruction, as given, expressed an opinion that the State had proven flight.

We find no merit in these arguments. In *State v. Tucker*, 329 N.C. 709, 407 S.E.2d 805 (1991) this Court stated:

> "[F]light from a crime shortly after its commission is admissible as evidence of guilt." *State v. Self*, 280 N.C. 665, 672, 187 S.E.2d 93, 97 (1972), and a trial court may properly instruct on flight "[s]o long as there is some evidence in the record reasonably supporting the theory that defendant fled after the commission of the crime charged," *State v. Greene*, 321 N.C. 594, 607, 365 S.E.2d 587, 595, *cert. denied*, 488 U.S. 900, 102 L. Ed. 2d 235 (1988) (quoting *State v. Irick*, 291 N.C. [480,] 494, 231 S.E.2d [833,] 842 [(1977)]).

*Id.* at 722, 407 S.E.2d at 813. The Court held in *Tucker* that the trial court's instruction on flight, which was identical to the instruction given in the instant case, was proper when the jury heard evidence "that defendant had shaved off a beard and mustache within two days of the murder, that police began looking for him two months later, and that he was not found until three years after the murder—in Texas." *Id.*

Here, we believe there was evidence in the record supporting flight. Evidence revealed that both defendants were seen by Officer Adamo walking away from the murder scene shortly after the shooting occurred. As Adamo approached defendants, they detoured across a parking lot. Upon Adamo's inquiry, defendants denied hearing any shooting and continued to walk away. Defendant Cureton was arrested three weeks later in Heritage East Apartments after Officer Reed found him hiding in a closet underneath a pile of clothing. This evidence was sufficient to support an instruction on flight.

We also conclude the trial court's instruction did not express an opinion on the flight issue. As stated in *Tucker*, "it was for the jury to decide whether these facts, taken together with other facts and circumstances, supported the State's contention that defendant had fled." *Id.* at 723, 407 S.E.2d at 813. Here, prior to giving the instruction, the trial court appropriately instructed the jury as follows:

> [Y]ou are the judges of the weight of the evidence. You are the judges of the weight to be given any evidence, and if you decide that certain evidence is believable, then you must determine the importance of that evidence in light of all other believable evidence in the case.

The trial court also accurately informed the jury that it was the contention of the State, not the trial court, that defendants fled. While there might have been an explanation for the defendants' attempt to avoid Officer Adamo, as well as for the law enforcement officers' discovery of defendant Cureton underneath a pile of clothing in a closet, this is best left to argument of counsel.

For the foregoing reasons, we arrest judgment in case number 90-CRS-36544 and remand that case for further proceedings. We hold defendants Abraham and Cureton otherwise received a fair trial free from prejudicial error.

90-CRS-37544 (Abraham: assault with a deadly weapon with intent to kill)—JUDGMENT ARRESTED; REMANDED.

89-CRS-085521 (Abraham: first-degree murder)—NO ERROR.

89-CRS-087459 (Cureton: first-degree murder)—NO ERROR.

90-CRS-37547 (Cureton: assault with a deadly weapon with intent to kill)—NO ERROR.