STATE OF NORTH CAROLINA v. JIMMY LEE JONES

No. 264A89

(Filed 12 June 1991)

1. **Criminal Law § 89.2 (NCI3d) — defendant's confession to detective — admissibility to corroborate witness's testimony**

A statement made by defendant to a detective that he had shot his wife was properly admitted to corroborate the testimony of a witness concerning a phone conversation he had had with defendant, since the statement recorded by the detective and the testimony of the witness both indicated that defendant said he had shot his wife at point blank range, and the fact that the statement included other matters not testified to by the witness about defendant's going home to

STATE v. JONES

[329 N.C. 254 (1991)]

get his shotgun and about his inability "to take it anymore" was not prejudicial to defendant.

**Am Jur 2d, Evidence § 1134.**

2. **Criminal Law § 34.2 (NCI3d)— defendant's guilt of another offense—cumulative evidence—admission of evidence not prejudicial**

In a prosecution of defendant for the murder of his wife, erroneously admitted testimony that defendant had been charged with assaulting her on one occasion was cumulative to other evidence that defendant and his wife had a stormy marriage, and defendant failed to show that had the error not occurred, there was a reasonable possibility that a different result would have been reached.

**Am Jur 2d, Evidence §§ 256, 320.**

APPEAL as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by *Brewer, J.,* at the 27 February 1989 Criminal Session of Superior Court, ONSLOW County, upon a jury verdict of first degree murder. Heard in the Supreme Court 4 September 1990.

The defendant was tried in a non-capital trial for the murder of his wife. The evidence showed that on 13 August 1988 Gail Jones, the defendant's wife, was living in the home of Carol Byers. At approximately 10:00 p.m. on that date the police were called to the home in which the two women were residing. There was an altercation at the home involving the defendant, the defendant's wife, Carol Byers, and Robert Lee Sanders who had formerly had a relationship with Ms. Byers. The officers took Mr. Sanders into custody and advised the two women to have warrants issued for the defendant and Mr. Sanders. The two women went to the magistrate's office to have warrants issued.

As Ms. Byers was leaving her home she told Bruce Johnson, who was on the scene, to wait for her in her house. After the warrants were issued Gail Jones took Ms. Byers and her child to the hospital and drove alone to Ms. Byers' home. Mr. Johnson testified that while he was in the house he heard a car door slam and then the sound of a "female's heels" coming toward the house. He then heard Gail Jones say, "[o]h, no Jimmy," followed by the

sound of a gunshot. Mr. Johnson then left the house and the defendant entered it.

Robert Lee Sanders testified that after he was arrested he called the home of Carol Byers to ask her to sign his bond. The defendant answered the phone and told him he had shot his wife.

The officers went to the home of Carol Byers. The body of Gail Jones was lying on the ground in front of the house. The defendant came out of the house and said, "I admit it, I shot her, I'll spend the rest of my life in jail."

The jury convicted the defendant of first degree murder and he was sentenced to life in prison. The defendant appealed.

*Lacy H. Thornburg, Attorney General, by William N. Farrell, Jr., Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for defendant appellant.*

WEBB, Justice.

[1] The defendant's first assignment of error deals with what he contends is hearsay testimony which was erroneously allowed under the guise of corroborating the testimony of a witness. On direct examination Robert Sanders testified as to his telephone conversation with the defendant in part as follows:

Q. What happened after that? What was said after he said, this is me, Jimmy?

A. He told me that he had just shot Gail and to get the police.

. . . .

Q. What else did he say to you before you gave them the phone?

A. Well, I had asked him where was Carol and Ashley were they there and he said, no, and he said, please hurry up and get the police, he didn't know, she still may be alive and she was laying in the road, he shot her point blank.

. . . .

Q. And he told you he shot her point blank?

A. Yes.

. . . .

STATE v. JONES

[329 N.C. 254 (1991)]

Q. Did he tell you anything about what he did before and after he shot Gail Jones?

A. No, he didn't.

Q. You don't recall?

A. I don't recall him mentioning anything.

Mack Whitney, a detective with the Onslow County Sheriff's Department, testified that Mr. Sanders had given him a statement. He identified what he said was a written verbatim account of the statement Mr. Sanders had made to him. This statement was received into evidence over the objection of the defendant for the purpose of corroborating the testimony of Mr. Sanders. In this statement Mr. Sanders purportedly told the detective that the defendant said to him on the telephone, "I can't take it, I went home, loaded my shotgun. I came back and I shot her, I shot her point blank."

The defendant argues that this statement which the detective testified Mr. Sanders gave to him did not corroborate the testimony of Mr. Sanders but contradicted it. He says the crucial question in the case was whether the gun was fired intentionally or accidentally. The only evidence that the gun was fired intentionally was provided by the testimony of Bruce Johnson, which was equivocal. He contends he was prejudiced by allowing the introduction of the statement which Mr. Whitney said Mr. Sanders made to him when the purported statement did not corroborate the testimony of Mr. Sanders.

A prior consistent statement of a witness is admissible to corroborate the testimony of the witness whether or not the witness has been impeached. *State v. Perry*, 298 N.C. 502, 259 S.E.2d 496 (1979). A prior statement of a witness may not be admitted if it is not consistent with the witness' testimony. *State v. Burton*, 322 N.C. 447, 368 S.E.2d 630 (1988).

In this case we cannot hold that testimony of Mr. Whitney as to what Mr. Sanders told him was so inconsistent with what Mr. Sanders told him that it should have been excluded. In the statement as recorded by Mr. Whitney, Mr. Sanders said the defendant told him he shot his wife at point blank range. Mr. Sanders testified to this. In the statement to which the defendant objected Mr. Whitney said that Mr. Sanders told him the defendant said,

**STATE v. JONES**

[329 N.C. 254 (1991)]

"I went home, loaded my shotgun." Mr. Sanders testified that he did not recall that the defendant mentioned anything that he did before he shot Gail Jones. This could not have prejudiced the defendant, however. The evidence showed the defendant did not have the shotgun when he was at the house earlier and he had it when he was there at the time of the shooting. He had to go somewhere and return with a loaded shotgun. The other part of the evidence to which the defendant objects was the purported statement by the defendant "I can't take it." All the evidence showed the defendant was very distraught during the incident. This testimony could not have prejudiced the defendant.

The defendant's first assignment of error is overruled.

[2]    The defendant's second assignment of error deals with questions asked of him on cross-examination. During cross-examination the defendant admitted he had previously been convicted of assaulting the deceased. He said he did not feel he had assaulted her. The following colloquy then occurred:

Q. Have you ever been investigated for assaulting her on another occasion?

A. Investigated?

Q. Yes, sir.

A. No, I've never been investigated.

Q. Well, have you ever been charged with assaulting her on another occasion?

    MR. GURGANUS: Objection.

Q. He said he didn't assault her. I think it goes to the truthfulness.

    COURT: Overruled.

Q. Have you ever assaulted her?

A. Yes.

Q. And did you not in fact back in March in 1987, March 18, 1987 you were charged with assault on a female of Gail Jones; is that correct, sir?

[A.] I can't remember, but I think so I was charged.

The defendant says it was error for the State to be allowed to ask the defendant whether he had been charged with assaulting his wife. In *State v. Williams*, 279 N.C. 663, 185 S.E.2d 174 (1971), we held it was error for the court to allow a question on cross-examination as to whether the witness had been charged with a crime. We held such testimony could not be used to impeach a witness. *See also* N.C.G.S. § 8C-1, Rule 609 (1983). It was error to allow the State to elicit this testimony that the defendant had been charged with assaulting his wife. The question is whether this error requires a new trial. If the defendant can show that had the error not occurred there is a reasonable possibility a different result would have been reached there must be a new trial. N.C.G.S. § 15A-1443(a) (1988). In this case there was substantial evidence that the marriage relationship of the defendant and his wife was a rocky one. He testified he had been convicted of assaulting her. There was other evidence of the stormy character of their marriage. This erroneously admitted testimony that he had been charged with assaulting her on one occasion was cumulative to other evidence of the type marriage the parties had. It could not have changed the jury's conclusion on this feature of the case. *State v. Carter*, 326 N.C. 243, 388 S.E.2d 111 (1990); *State v. Fisher*, 318 N.C. 512, 350 S.E.2d 334 (1986); *State v. Billups*, 301 N.C. 607, 272 S.E.2d 842 (1981).

The defendant's second assignment of error is overruled.

No error.