IN THE SUPREME COURT OF NORTH CAROLINA

No. 274A18

Filed 16 August 2019

STATE OF NORTH CAROLINA

v.

DUVAL LAMONT BOWMAN


Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 818 S.E.2d 718 (N.C. Ct. App. 2018), vacating a judgment entered on 27 July 2016 by Judge Richard S. Gottlieb in Superior Court, Forsyth County, and remanding for a new trial. On 24 October 2018, the Court allowed the State's petition for discretionary review of additional issues. Heard in the Supreme Court on 14 May 2019 in session in the Pitt County Courthouse in the City of Greenville pursuant to section 18B.8 of Chapter 57 of the 2017 Session Laws of the State of North Carolina.

*Joshua H. Stein, Attorney General, by Joseph L. Hyde, Assistant Attorney General, for the State-appellant.*

*Richard Croutharmel for defendant-appellee.*


EARLS, Justice.

At defendant Duval Bowman's trial for the 2014 murder of Anthony Johnson, Lakenda Malachi was the only witness to provide direct evidence of Bowman's presence at the scene. Bowman sought to impeach Malachi's testimony by introducing evidence that Malachi was in plea negotiations over pending charges

against her and that she would receive favorable treatment for her testimony against Bowman, but the trial court sustained objections to defense counsel's questions. Bowman was found guilty of attempted robbery with a dangerous weapon, possession of a firearm by a felon, and the first-degree murder of Anthony Johnson. He was sentenced to life imprisonment without parole.

Defendant argued at the Court of Appeals that the trial court committed reversible error by preventing his counsel from adequately cross-examining Malachi regarding the pending charges. The Court of Appeals' majority agreed with defendant, holding that the trial court committed constitutional error by restricting defendant's cross-examination of Malachi and that the error was not harmless beyond a reasonable doubt. *State v. Bowman*, 818 S.E.2d 718, 719 (N.C. Ct. App. 2018). Judge Dillon agreed that the trial court erred by limiting the cross-examination of Malachi but concluded the error was harmless beyond a reasonable doubt. *Id.* at 722 (Dillon, J., dissenting). The State filed its appeal of right based on Judge Dillon's dissenting opinion. We must now determine whether the trial court violated defendant's Sixth Amendment right to confront witnesses against him by limiting defendant's cross-examination of the State's principal witness and whether that error was harmless beyond a reasonable doubt. Because we agree that the trial court committed prejudicial error, we affirm the Court of Appeals' holding and its order that defendant receive a new trial.

**Factual and Procedural Background**

### A. Facts

Defendant, Johnson, and Malachi were all involved in the illicit drug business. Around the time of his murder, Johnson was engaged to Malachi and they lived together with their four-year-old son. At trial, the State presented no physical evidence linking defendant to the shooting but argued that Malachi's testimony established defendant's guilt. Defendant also testified at trial, denying his involvement in the murder, and raising the suggestion that Malachi may have murdered Johnson. Necessarily either defendant or Malachi must have been misrepresenting essential facts about Johnson's death.

According to Malachi's trial testimony, around 3:00 a.m. on 23 February 2014, defendant went to Malachi's house to confront Johnson about money he owed defendant. Once in the living room where Johnson and Malachi were on the couch, defendant asked Malachi, "Where your gun at?" Defendant was referring to Malachi's 9-millimeter, semiautomatic pistol. Malachi told defendant she had her gun on her, but she was lying to him. Malachi then looked on the shelf in the living room where she normally kept her weapon, but did not see it there. Malachi testified that she left the living room to look for the gun but turned around and saw defendant wearing white latex gloves and holding a gun in each hand. Defendant was standing over Johnson and stated, "Ya'll did me dirty." Malachi turned and ran to her bedroom and heard shots being fired as she ran away. She also heard defendant rattling things in the living room. Malachi then ran to the couple's son's room, locked the door, and hid

in the closet. The couple's son was asleep in his bedroom when defendant kicked in the door then walked towards the son's bed. Upon seeing this, Malachi came out of the closet and told defendant that she would find the money for him. The couple's son continued to sleep throughout the encounter.

Malachi asked Johnson where the money was before defendant began stomping on Johnson as he lay motionless on the floor. As Malachi looked for the money, defendant hit her with the two handguns and threatened to shoot her in the feet. Defendant said he was going to kill Johnson and walked into the kitchen. Seeing her chance to escape, Malachi ran out of the house and hid near her neighbor's house until she saw what appeared to be a green station wagon drive away from her house. Malachi then rang her neighbor's doorbell until they responded. Once inside, Malachi asked to use their telephone and made calls to two different male friends whom she hoped would come pick up her son before police arrived. The neighbors called the police after Malachi finished her calls.

Johnson was pronounced dead when police arrived. He had been shot once in the leg and twice in the back. A revolver was used in the killing, as well as a 9-millimeter, semiautomatic pistol, but the police found no guns. They did find a box for a 9-millimeter Glock handgun in a shoe box on the top shelf of the closet in the master bedroom, along with various rounds of ammunition, a handgun magazine, and a receipt for the purchase of the gun. A gunshot residue test on Malachi's hands showed some amounts of lead, antimony, and barium but overall was an inconclusive

result. However, Malachi had washed her hands while at the neighbor's house. Bowman was apprehended three weeks later in New York and denied any involvement in Johnson's death.

At trial, defendant denied murdering Johnson. Defendant also testified that Malachi and Johnson had a violent relationship and that Malachi carried a gun. Malachi was jealous of Johnson because he cheated on her and she would become physically violent with Johnson. She was particularly violent when she drank alcohol. Malachi admitted that she drank alcohol the night of Johnson's murder. A few weeks before the murder, Malachi was upset with Johnson over another woman who was at a liquor house with him.

On the night in question, defendant went to a liquor house around 11:00 p.m. Defendant then met a friend named Lorenzo Peace around 11:30 p.m. Peace had defendant drop him off at a friend's house before defendant drove back to the liquor house in Peace's vehicle. Around midnight, defendant left the liquor house to conduct a drug transaction with a man named Jay. Afterwards, defendant returned to the liquor house. Defendant met Peace at Bill's Truck Stop at about 5:00 a.m. before returning home. Sometime after arriving home, defendant received a phone call alerting him that Johnson was dead. Defendant fled to New York after receiving threatening messages and learning he was accused of Johnson's murder.

**B. Pretrial Proceedings**

The State filed a motion in limine to preclude the defense from questioning

Malachi about her pending drug trafficking charges in Guilford County. Defendant objected to the State's request, arguing that there was an e-mail exchange between the Guilford County prosecutor handling Malachi's drug charges and the Forsyth County prosecutor involved in defendant's murder trial. Based on the e-mail exchange concerning a possible plea deal, the trial court ruled that defendant could question Malachi about the pending drug charges, as well as what she knew about any potential deals or favorable treatment as a result of her testimony at trial.

**C. Trial**

During cross-examination, defense counsel questioned Malachi regarding several drug charges pending against her including: one count of trafficking in methamphetamine, one count of conspiracy to traffic in methamphetamine, one count of trafficking in marijuana, and one count of conspiracy to traffic in marijuana. Malachi admitted that these charges were pending against her in Guilford County and admitted that she was aware that each of the charges involving methamphetamine carried a sentence of 90 months to 120 months in prison. Similarly, Malachi acknowledged that each of the charges involving marijuana carried a mandatory sentence of 25 to 30 months in prison. Defense counsel then questioned Malachi about a possible plea deal.

> Q. What, if anything, have you been offered from the State at this point regarding those pending charges?
>
> A. I don't know nothing about that.

Q.    So nothing has been finalized in Guilford County?

[PROSECUTOR]:  Objection.

THE COURT:    Sustained.

[ ]

Q.    You're not aware of any current plea offer at this point.  Correct?

A.    Yes, sir.

Q.    Have you – – are you aware that there are such things as plea offers?

[PROSECUTOR]:  Objection.

THE COURT:    I'll    allow    that    one question.

[ ]

Q.    Ma'am?

A.    Yes, sir.

Q.    What, if anything, do you hope to gain out of testifying here for the State with regard to those five pending charges?

A.    Justice for Anthony Johnson.

Q.    So you don't think you're going to get anything out of it for the charges you got?

[PROSECUTOR]: Objection.

THE COURT:    Sustained.

[ ]

Q.      Are you aware of any other considerations you might have for those pending charges right now?

[PROSECUTOR]: Objection.

THE COURT:      Sustained.

The jury found defendant guilty of first-degree murder, attempted robbery with a dangerous weapon, and possession of a firearm by a felon.  The trial court arrested judgment on the conviction for attempted armed robbery and consolidated the other two convictions.  Defendant was sentenced to life in prison without parole.

**Analysis**

In general, we review a trial court's limitation on cross-examination for abuse of discretion.  *See State v. McNeil*, 350 N.C. 657, 678, 518 S.E.2d 486, 499 (1999).  If the trial court errs in excluding witness testimony showing possible bias, thus violating the Confrontation Clause, the error is reviewed to determine whether it was harmless beyond a reasonable doubt.  *Id.* at 678, 518 S.E.2d at 499.  "The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' "  *Davis v. Alaska*, 415 U.S. 308, 315 (1974).  An accused confronts the witnesses against him through cross-examination, which tests "the believability of a witness and the truth of his testimony."  *Id.* at 316.  By way of the Confrontation Clause, the accused is guaranteed effective cross-examination, but "[t]rial judges retain broad discretion to preclude cross-examination that is repetitive or that is intended to merely harass,

annoy or humiliate a witness." *State v. Mason*, 315 N.C. 724, 730, 340 S.E.2d 430, 434 (1986) (citations omitted). Here, we must first determine whether the trial court violated defendant's Sixth Amendment right by limiting his cross-examination of Malachi and if so, whether that error was harmless beyond a reasonable doubt.

Generally, a defendant may not cross-examine a witness regarding pending charges. *See State v. Abraham*, 338 N.C. 315, 353, 451 S.E.2d 131, 151 (1994) (error to allow cross-examination of prior bad acts, plea deal, and pending warrant). *See also State v. Jones*, 329 N.C. 254, 259, 404 S.E.2d 835, 837 (1991) (cross-examination of a pending charge could not be used to impeach a witness). An exception to this rule is compelled by the Sixth Amendment Confrontation Clause when defendant seeks to show bias or undue influence by the state because of the pending charges. *See Davis*, 415 U.S. at 315. Such potential bias or influence is present when a witness faces pending charges in the same jurisdiction he testifies in, allowing a defendant to cross-examine the witness concerning the charges. *See State v. Murrell*, 362 N.C. 375, 404, 665 S.E.2d 61, 80 (2008). However, where a witness faces pending charges in a separate jurisdiction than the one he testifies in, a defendant must "provide[ ] [ ] supporting documentation of a[ ] discussion between the two district attorneys' offices to demonstrate that [the witness]'s testimony [i]s biased." *Murrell* at 404, 665 S.E.2d at 80.

This issue was addressed by this Court in *State v. Prevatte*, 346 N.C. 162, 484 S.E.2d 377 (1997). In *Prevatte*, the defendant was on trial for first-degree murder

where the state's principal witness was an eyewitness to the murder. 346 N.C. at 162, 484 S.E.2d at 378. The eyewitness had been indicted on nine charges of forgery and uttering forged checks in another county at the time he testified. *Id.* at 163, 484 S.E.2d at 378. Even though it was a different county, the same district attorney was in charge of both cases. *Id.* at 163, 484 S.E.2d at 378. During trial, the court prohibited the defendant from questioning the witness regarding the pending criminal charges and whether he had been promised anything in exchange for his testimony. *Id.* at 163–64, 484 S.E.2d at 378. Instead, the court held a voir dire hearing outside the presence of the jury in which the defendant was allowed to cross-examine the witness about the charges. *Id.* at 164, 484 S.E.2d at 378. Because the questioning took place outside their presence, jurors were prevented from hearing the testimony that could have shown the witness's bias. *Id.* at 164, 484 S.E.2d at 378. This Court stated, "[t]he fact that the trial of [the witness] on the forgery and uttering charges had been continued for eighteen months might have led the jury to believe the State was holding those charges in abeyance pending the witness' testimony in this case." *Id.* at 164, 484 S.E.2d at 378. As a result, this Court issued the defendant a new trial, holding that the trial court committed constitutional error in limiting the cross-examination of the witness and "that the error was not harmless." *Id.* at 164, 484 S.E.2d at 378–79. The State argued that during the voir dire hearing, the defendant testified that there was no agreement for his pending charges in exchange for his testimony. *Id.* at 164, 484 S.E.2d at 378. In response, the Court reasoned that

even if the witness's "testimony show[ed] that [the witness] expected nothing from the State for his testimony against the defendant[,] [t]he effect of the handling of the pending forgery and uttering charges on the witness was for the jury to determine" and "[n]ot letting the jury do so was error." *Id.* at 164, 484 S.E.2d at 378–79. The Court based its reasoning on *Davis v. Alaska* in holding that the error was not harmless beyond a reasonable doubt. *Id.* at 163–64, 484 S.E.2d at 378.

*Davis* involved a witness who was on probation for burglarizing two residences when he testified as an eyewitness against the defendant. 415 U.S. at 310–11. Since the witness was a juvenile at the time, the State made a motion for a protective order regarding the witness's juvenile record, which the trial court granted. *Id.* at 311. The protective order barred the defendant from inquiring about the witness's probationary status or criminal record. *Id.* at 312. As a result, it was impossible for the defendant to show the witness's possible bias during cross-examination. *Id.* at 312. On appeal, the Supreme Court determined:

> Since defense counsel was prohibited from making inquiry as to the witness' being on probation under a juvenile court adjudication, [the witness]'s protestations of unconcern over possible police suspicion that he might have had a part in the [crime] and his categorical denial of ever having been the subject of any similar law enforcement interrogation went unchallenged.

*Id.* at 313–14. The Court emphasized that "the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [the witness]'s testimony which provided 'a

crucial link in the proof . . . of [the defendant's] act.' " *Id.* at 317 (second alteration in original) (quoting *Douglas v. Alabama*, 380 U.S. 415, 419 (1965)). Because the jury was prohibited from learning about the witness's probationary status and whether the witness's criminal record motivated his testimony, the defendant was "denied the right of effective cross-examination . . . 'and no amount of showing of want of prejudice would cure it.' " *Id.* at 318 (citation omitted) (quoting *Smith v. Illinois*, 390 U.S. 129, 131 (1968)).

Here, the trial judge allowed defendant to cross-examine Malachi in the presence of the jury concerning the pending charges against her. Although the court did not completely deny defendant the right to cross-examine Malachi, it did place "a *significant limitation* on [ ] defendant's cross-examination of the State's principal witness." *State v. Hoffman*, 349 N.C. 167, 180, 505 S.E.2d 80, 88 (1998) (emphasis added). Thus, defendant was "denied the right of *effective* cross-examination." *Davis*, 415 U.S. at 318 (emphasis added). Malachi, like the witnesses in *Prevatte* and *Davis*, was the State's principal witness and was present when Johnson was murdered. At the time of the trial, Malachi was facing criminal charges that, if convicted, could result in her imprisonment for more than nineteen years.

In a voir dire hearing that was held outside the presence of the jury, defendant's evidence demonstrated that the prosecutor responsible for Malachi's drug charges was in communication with the prosecutor responsible for defendant's murder trial. The two prosecutors had exchanged e-mails concerning a possible plea

deal for Malachi based on her testimony at defendant's trial. Recognizing that Malachi was the only witness to the crime and that she was facing more than a decade in prison because of her pending drug charges, the State "had a strong[ ] weapon to control [Malachi]." *Prevatte*, 346 N.C. at 164, 484 S.E.2d at 378.

During trial, the court limited defendant's cross-examination of Malachi several times. When defendant asked Malachi whether a deal had been finalized in Guilford County concerning her pending charges, the prosecutor objected and the court sustained the objection. Likewise, when defendant asked Malachi whether she thought she was "going to get anything out of it" for the charges pending against her based on her testimony, the court again sustained the prosecutor's objection. Finally, defendant asked Malachi whether she was aware of any current considerations she might have for her pending charges. Before Malachi could answer, the prosecutor again objected and the court sustained the motion. Here, the concern with the court's limitations on cross-examination lies not with whether Malachi received a plea deal, but with the jury's inability to consider her testimony. By limiting Malachi's testimony, the court prohibited the jury from considering evidence that could have shown bias on Malachi's part. To reiterate, "[t]he effect of the handling of the pending . . . charges on [Malachi] was for the jury to determine" and "[n]ot letting the jury do so was error." *Prevatte* at 164, 484 S.E.2d at 378–79. Accordingly, the trial court abused its discretion in limiting defendant's cross-examination of Malachi, thereby violating the Confrontation Clause.

This Court in *State v. Hoffman* held that although the trial court erred in prohibiting the defendant's cross-examination of a witness about charges pending against him, the error was harmless. 349 N.C. at 181, 505 S.E.2d at 89. Unlike here, the witness in *Hoffman* was not a principal witness but only a corroborating witness. *Id.* at 180, 505 S.E.2d at 88. As such, the State's case did not rest solely on the witness's testimony. *Id.* at 180, 505 S.E.2d at 88 ("[The witness's] minimal importance [wa]s evidenced by the fact that the prosecutor scarcely mentioned him in his closing argument."). In addition to the witness's lack of significance to the State's case, the defendant was able to "thoroughly impeach[ ]" the witness regarding prior inconsistent statements and a lengthy history of past convictions. *Id.* at 180–81, 505 S.E.2d at 88–89. Finally, there was substantial evidence showing the defendant's guilt aside from the witness's testimony. *Id.* at 181, 505 S.E.2d at 89. The defendant was charged with robbery with a dangerous weapon and first-degree murder. *Id.* at 173, 505 S.E.2d at 84. The State presented evidence at the defendant's trial showing that the defendant was seen outside of the victim's store before the robbery and murder occurred. *Id.* at 181, 505 S.E.2d at 89. Another witness testified that the defendant had asked him to rob the store with the defendant. *Id.* at 181, 505 S.E.2d at 89. Other witnesses testified that the defendant admitted to murdering the victim. *Id.* at 181, 505 S.E.2d at 89. Finally, physical evidence found at the scene of the crime was consistent with a witness's testimony regarding what the defendant had told the witness about the crime. *Id.* at 181, 505 S.E.2d at 89. Because there

was substantial evidence against the defendant along with the impeachment evidence against the State's corroborating witness, the trial court's error "was harmless beyond a reasonable doubt." *Id.* at 181, 505 S.E.2d at 89.

In this case, the State argues that any error committed by the trial court was harmless beyond a reasonable doubt based on the thoroughness of defendant's cross-examination of Malachi and her impeachment over prior inconsistent statements. *See McNeil*, 350 N.C. at 680, 518 S.E.2d at 500 (evidence of the thorough impeachment of a witness regarding inconsistent statements may result in harmless error). In *McNeil* this Court reasoned that "as in *Hoffman*, [the] defendant here thoroughly impeached [the witness] regarding her prior inconsistent statements and prior convictions." 350 N.C. at 680, 518 S.E.2d at 500. The Court found no error in *McNeil* and pointed out that the defendant had pleaded guilty to both counts of first-degree murder and only challenged errors in his sentencing phase. 350 N.C. at 680, 518 S.E.2d at 500. *See also State v. Atkins*, 349 N.C. 62, 505 S.E.2d 97 (1998) (finding no error where the defendant argued the trial court denied him the right to confront a witness testifying against him in his sentencing phase after pleading guilty to first-degree murder).

However, as in *Prevatte*, here Malachi was the key witness against defendant and was vital to the State's case due to the lack of other evidence against defendant. There was no physical evidence linking defendant to the crime and no other witnesses who placed him at the scene. While the State presented circumstantial evidence at

trial, its case relied heavily on Malachi's testimony. Therefore, it was crucial for defendant to demonstrate Malachi's possible bias to the jury. The trial court erred by limiting the cross-examination of the State's principal witness when there was a lack of substantial evidence linking defendant to the crime and the error was not harmless beyond a reasonable doubt.

## Conclusion

Because the trial court erred in limiting defendant's cross-examination of the State's principal witness and because that error was not harmless beyond a reasonable doubt, defendant is entitled to a new trial. Accordingly, we affirm the decision of the Court of Appeals vacating the verdict and judgment of the superior court. The cause is remanded to the Court of Appeals for further remand to the Superior Court in Forsyth County for a new trial.

AFFIRMED AND REMANDED.

Justice ERVIN dissenting.

I do not believe, for the reasons set forth in more detail below, that the trial court impermissibly limited defendant's ability to cross-examine Ms. Malachi. On the contrary, while the trial court did sustain the State's objections to certain questions that defendant attempted to pose to Ms. Malachi on cross-examination, the record clearly reflects that defendant "was . . . able to get his contentions before the jury," *State v. Ray*, 336 N.C. 463, 473, 444 S.E.2d 918, 925 (1994), and the Court has not identified any information necessary to support his bias-related challenge to Ms. Malachi's credibility that the jury did not hear. As a result, I respectfully dissent from the Court's decision to affirm the Court of Appeals' decision to award defendant a new trial.

As a general proposition, the scope of cross-examination is committed to the sound discretion of the trial court. In other words, "defendant's right to cross-examination is not absolute," *State v. Guthrie*, 110 N.C. App. 91, 93, 428 S.E.2d 853, 854 (1993), with "the scope of cross-examination [being] subject to appropriate control in the sound discretion of the court." *State v. Coffey*, 326 N.C. 268, 290, 389 S.E.2d 48, 61 (1990); *see also Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974) (stating that the right of cross-examination is "[s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation"); *State v. Ward*, 354 N.C. 231, 261, 555 S.E.2d 251, 270 (2001) (holding that "the limits placed by the trial court on defendant's cross-

examination of these witnesses [constituted] an appropriate exercise of its discretion" given that "the questions called for incompetent hearsay testimony, were unduly repetitive or argumentative, or were simply improper in form"); *State v. Mason*, 315 N.C. 724, 730, 340 S.E.2d 430, 434 (1986) (stating that "trial judges retain broad discretion to preclude cross-examination that is repetitive").

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend VI. In *Davis*, the United States Supreme Court held that the defendant had a Sixth Amendment right to question a witness who was on probation about his probationary status in order to establish that the witness might be motivated to testify for the prosecution for the purpose of reducing or eliminating his own exposure to criminal prosecution or other adverse consequences. *Davis*, at 415 U.S. 316–319, 94 S. Ct. at 1110–11, 39 L. Ed.2d at 347. Even in that context, however, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant[, with] 'the Confrontation Clause [serving to] guarantee[ ] an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435, 89 L. Ed. 2d 674,

683 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 295, 86 L. Ed. 2d 15, 19 (1985) (per curiam) (emphasis in the original)).

A number of decisions of this Court have considered the appropriateness of various trial court rulings concerning the extent to which criminal defendants were entitled to cross-examine prosecution witnesses concerning pending criminal charges for the purpose of showing that those witnesses were biased in favor of the prosecution and against the defendant. For example, in *State v. Prevatte*, 346 N.C. 162, 162–64, 484 S.E. 2d 377, 377–79 (1997), the defendant was under indictment for nine counts of forgery and uttering. The trial court refused to allow the defendant to question or elicit testimony from a prosecution witness concerning that witness's pending charges for the purpose of establishing that the witness "had been promised or expected anything in regard to the charges in exchange for his testimony." *Id.* at 163, 484 S.E.2d at 378. In holding that the trial court's ruling was erroneous and awarding the defendant a new trial, this Court stated, in reliance upon *Davis*, that, when the State "had a strong[ ] weapon to control the witness," such as the ability to utilize the plea negotiation process to persuade the witness in question to testify on behalf of the State, the defendant must be allowed to question the witness concerning his or her pending criminal charges. *Id.* at 164, 484 S.E.2d at 378–79.

On the other hand, in *State v. Atkins*, 349 N.C. 62, 80–81, 505 S.E.2d 97, 109 (1998), the trial court, after refusing to allow the defendant to question the State's principal witness about whether she could receive the death penalty in the event that

she declined to testify for the State, permitted the defendant to ask the witness "[w]hat kind of promises . . . has the State made you in exchange for your testimony," to which the witness replied, simply, "None." *Atkins*, 349 N.C. at 81, 505 S.E.2d at 109. Although the defendant in *Atkins* challenged the trial court's decision to sustain the State's objection to the question asking, "[s]o you can't get the death penalty, can you," on appeal, this Court rejected defendant's contention that the trial court's ruling impermissibly interfered with his confrontation rights on the grounds that "[t]he trial court allowed exactly the type of questioning mandated by *Prevatte*" and that "[d]efendant was clearly allowed to inquire into any potential bias of [the witness] based upon any arrangement between the witness and the prosecution." *Id.* at 80–81, 505 S.E.2d at 109. As a result, this Court's confrontation-related jurisprudence focuses upon whether the defendant was allowed to engage in sufficient cross-examination to support an argument to the jury that the witness was biased in favor of the prosecution rather than upon whether the trial judge sustained an objection to any particular question.

As the majority notes, limitations upon the scope of cross-examination imposed by trial judges are reviewed on appeal using an abuse of discretion standard. *See State v. McNeil*, 350 N.C. 657, 678, 518 S.E. 2d 486, 499 (1999). "[A] trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *State v. McGrady*, 368 N.C. 880, 893, 787 S.E.2d 1, 11 (2016) (quoting *State v.*

*Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986)). "Absent a showing of an abuse of discretion or that prejudicial error has resulted, the trial court's ruling will not be disturbed on review." *State v. Maynard*, 311 N.C. 1, 10, 316 S.E.2d 197, 202–03 (1984).

A careful examination of the record reveals that defendant was afforded ample opportunity to cross-examine Ms. Malachi concerning her pending Guilford County drug charges, which had been the subject of communications with those responsible for prosecuting defendant. In anticipation of trial, the State filed a motion in limine seeking the entry of an order that, among other things, precluded defendant from cross-examining Ms. Malachi about the criminal charges that were pending against her in Guilford County. Prior to the beginning of the trial, the trial court heard arguments concerning the State's motion in limine. At the conclusion of those arguments, the trial court determined that:

> [H]aving heard arguments of counsel, having reviewed the motion on the limited question of whether or not the charges and any potentially favorable treatment as a result – *that testimony will be allowed*, and the motion is overruled to that limited extent.
>
> *The defendant will be allowed to ask about the nature of the charges and what the defendant knew about any potential deals or favorable treatment as a result of her testimony here.*
>
> In reaching that decision, I have done a balancing test. And I find that it is relevant. I also find that it's – in order to actually get a context requires a little bit of background

> to it. But it's not going to be at this point an in-depth discussion of those facts.

(emphasis added). After the completion of Ms. Malachi's testimony on direct examination and prior to the beginning of her cross-examination, the trial court conducted additional proceedings out of the presence of the jury for the purpose of addressing a number of potential evidentiary issues, including the extent to which defendant would be allowed to question Ms. Malachi concerning her pending criminal charges. Following a recitation of the questions that defendant intended to ask Ms. Malachi concerning those pending charges, the trial court delineated the scope of the cross-examination questioning that it intended to permit:

> You may ask if she – you may ask about the charges. You may ask if she has been offered any incentive to testify. And you may ask if she is hoping to gain a benefit, either a reduction in sentence if she pleads guilty or otherwise, as a result of her testimony here. You may also ask her – and it may be a lead-up question – if she's aware of the potential sentences that she would be facing.

During her cross-examination in the presence of the jury by defendant's trial counsel, Ms. Malachi testified that

> Q. Isn't it true on [21 January 2015], you were charged by the High Point Police Department with one count of trafficking in methamphetamine, one count of conspiracy to traffic in methamphetamine, one count of trafficking in marijuana and one count of conspiracy to traffic in marijuana?
>
> . . . .
>
> A. Yes, sir.

Q. And those charges are still pending, are they not?

A. Yes, sir.

After establishing that Ms. Malachi knew that "the trafficking in methamphetamine and the conspiracy to traffic in methamphetamine carry a sentence of 90 months minimum to 120 months maximum," that "the trafficking in marijuana charges" "each . . . carr[y] a mandatory sentence of 25 months minimum to 30 months maximum active prison time," that these cases were pending in Guilford County, and that she was represented by counsel, the following additional proceedings occurred:

Q. What, if anything, have you been offered from the State at this point regarding those pending charges?

A. I don't know nothing about that.

Q. So nothing has been finalized in Guilford County?

MR. TAYLOR: Objection.

THE COURT: Sustained.

BY MR. JAMES:

Q. You're not aware of any current plea offer at this point. Correct?

A. Yes, sir.

Q. Have you – are you aware that there are such things as plea offers?

MR. TAYLOR: Objection.

THE COURT: I'll allow that one question.

BY MR. JAMES:

Q. Ma'am?

A. Yes, sir.

Q. What, if anything, do you hope to gain out of testifying here for the State with regard to those five pending charges?

A. Justice for Anthony Johnson.

Q. So you don't think you're going to get anything out of it for the charges you got?

MR. TAYLOR: Objection.

THE COURT: Sustained.

BY MR. JAMES:

Q. Are you aware of any other considerations you might have for those pending charges right now?

MR. TAYLOR: Objection.

THE COURT: Sustained.

As a result, defendant's trial counsel was allowed to establish that, at the time of defendant's trial, Ms. Malachi had been charged in Guilford County with one count of trafficking in methamphetamine, one count of conspiracy to traffic in methamphetamine, one count of trafficking in marijuana, and one count of conspiracy to traffic in marijuana; that she faced sentences of 90 to 120 months imprisonment in each of the methamphetamine-related cases and sentences of 25 to 30 months

imprisonment in each of the marijuana-related cases; that she was aware of the plea negotiation process; that she was not aware that any plea offer had been extended to her in these Guilford County cases; and that she "hoped to gain" "[j]ustice for Anthony Johnson" by testifying for the State against defendant. I am hard put to understand why this information, without more, does not suffice to support an argument to the jury that Ms. Malachi was biased in favor of the State and against defendant by virtue of the leverage given to the State by virtue of the existence of these pending Guilford County charges.

In holding that the trial court placed impermissible limitations upon defendant's ability to cross-examine Ms. Malachi about the potentially biasing effect of her pending Guilford County drug charges, the Court focuses solely upon the fact that the trial court sustained the State's objections to questions inquiring whether anything "had been finalized in Guilford County," whether she thought that she was "going to get anything out of [testifying] for the charges you got," and whether she was "aware of any other considerations you might have for her pending charges right here." Although the Court states that, "[b]y limiting [Ms.] Malachi's testimony, the court prohibited the jury from considering evidence that could have shown bias on [Ms.] Malachi's part," the record contains no support for the Court's apparent assumption that Ms. Malachi's answers to the questions to which the State's objections were sustained would have benefitted defendant. On the contrary, Ms. Malachi testified on voir dire that she was not expecting to receive any benefit for

testifying on the State's behalf at defendant's trial and that the only goal that she

sought to achieve by testifying for the State against defendant was to obtain justice

for Anthony Johnson.

In addition, the record reflects that the trial court had ample justification for

sustaining the State's objections to each of the three questions upon which the Court's

decision rests and certainly did not act in an arbitrary and capricious manner in

making the challenged rulings, particularly given the extensive cross-examination of

Ms. Malachi that the trial court otherwise allowed.[1]  After the trial court sustained

the State's objection to defendant's question inquiring whether anything had "been

finalized in Guilford County," the trial court allowed defendant to ask Ms. Malachi

whether she was "aware of any current plea offer at this point" and received what

amounted, in substance, to a negative answer.  Thus, the record establishes that Ms.

Malachi actually provided the information that defendant sought to obtain by posing

the first question to which the trial court sustained the State's objection.

Furthermore, the questions to which the second and third of the State's successful

objections were directed inquired if Ms. Malachi thought that she was "going to get

anything out of [testifying] for the charges you got" and if she was "aware of any other

considerations she might have for those pending charges right now."  Immediately

---

[1] Although the Court acknowledges that defendant's claim is subject to abuse of discretion, rather than *de novo*, review in stating the applicable standard of review, the Court does not, as best I can tell, ever take the applicable standard of review into consideration at any point in its analysis and never makes reference to the applicable standard of review in analyzing the validity of defendant's claim.

prior to the posing of these questions, defendant had asked Ms. Malachi what she "hope[d] to gain out of testifying here for the State with regard to those five pending charges" and was told, consistently with the answer that she had given to essentially the same question on voir dire, "[j]ustice for Anthony Johnson." Aside from the fact that Ms. Malachi had already effectively answered the second of these two questions when she testified that she did not have a plea offer at the time that she testified for the State at defendant's trial, the second and third of the three questions to which the trial court sustained the State's objections essentially repeated a question that the trial court had already allowed defendant to pose and that Ms. Malachi had already answered.[2] As a result, rather than impermissibly constraining defendant's ability to question Ms. Malachi concerning bias-related issues arising from the existence of the charges that were pending against her in Guilford County, the trial court rulings to which the Court's holding is directed represent nothing more than the appropriate exercise of the trial court's discretion to control the scope and extent of cross-examination for the purpose of preventing confusion and eliminating undue repetition. *Ward*, 354 N.C. at 261, 555 S.E.2d at 270 (holding that "the questions [that defendant sought to pose concerning the events that took place on the day of a murder and the witness's plea agreements] called for incompetent hearsay testimony, were unduly repetitive or argumentative, or were simply improper in form"); *McNeill*,

---

[2] In the event that defendant believes that Ms. Malachi's statement that she hoped to achieve "[j]ustice for Anthony Johnson" was not responsive to the question that defendant posed, he could have moved to strike Ms. Malachi's statement as unresponsive.

350 N.C. at 678, 518 S.E.2d 499 (holding that "further cross-examination relating to [the witness's] unserved warrants . . . would be repetitive and cumulative of the evidence already presented") (citing *State v. Howie*, 310 N.C. 613, 616, 313 S.E.2d 554, 556 (1984)).

The Court's decision in this case cannot, at least in my opinion, be squared with our existing decisional law concerning the nature and extent of the trial court's authority to control the scope and extent of a defendant's ability to question a prosecution witness concerning bias-related issues arising from the existence of pending criminal charges. For example, this case does not involve the total preclusion of cross-examination concerning a witness's pending charges of the type that this Court determined to have been erroneous in *Prevatte*, 346 N.C. at 164, 484 S.E.2d at 378–79, and *State v. Hoffman*, 349 N.C. 167, 181, 505 S.E.2d 80, 89 (1998) (holding that "the trial court erred by not allowing defendant to cross-examine [a prosecution witness] regarding his pending charges for breaking and entering"). On the contrary, the cross-examination that the trial court allowed concerning Ms. Malachi's pending charges in this case was much more extensive than that deemed to be sufficient in *McNeill*, 350 N.C. at 676–78, 518 S.E.2d. at 498–99 (holding that the trial court permitted a sufficient inquiry into a prosecution witness's pending charges by allowing "defendant wide latitude to expose [the witness's] alleged bias and motive by allowing cross-examination regarding all of [her] prior convictions" and instructing the jury that the witness was testifying pursuant to a plea agreement that provided

her with a charge reduction and a sentence concession in return for her testimony, that the witness was an accomplice deemed to have an interest in the outcome of the proceeding, and that defendant contended that the witness had made false, contradictory, and conflicting statements), and *Atkins*, 349 N.C. at 81, 505 S.E.2d at 109 (holding that the trial court had allowed a sufficient inquiry into a prosecution's pending charges by permitting defendant to inquire "[w]hat kind of promises . . . has the State made you in exchange for your testimony"). Simply put, the result reached by the Court in this case is fundamentally inconsistent with our prior decisions concerning the nature and extent of a defendant's right to cross-examine prosecution witnesses concerning any pending charges that they might be facing at the time of their testimony, at least two of which have held that much more limited questioning than that which the trial court allowed in this case satisfied the requirements of the Confrontation Clause.

In summary, a careful review of the record reveals that the trial court allowed an extensive exploration of the criminal charges that Ms. Malachi was facing at the time that she testified on behalf of the State and against defendant. The evidence that defendant's trial counsel elicited during his thorough cross-examination of Ms. Malachi supplied sufficient information to support a concentrated attack upon her credibility given that Ms. Malachi admitted that she was facing serious criminal charges in Guilford County, that she was familiar with the plea negotiation process, and that no proposed plea agreement had been extended to her at the time of

defendant's trial. The trial court had legitimate justification for sustaining each of the successful objections that the State asserted during the relevant portion of Ms. Malachi's cross-examination, and the Court has failed to point to any additional evidence or any additional bias-related argument that defendant would have been able to elicit in the absence of the trial court's ruling. Finally, the Court's decision conflicts with our existing jurisprudence concerning the nature and extent of a criminal defendant's right to cross-examine prosecution witnesses concerning pending criminal charges. As a result, for all of these reasons, I respectfully dissent from the Court's decision to affirm the Court of Appeals' decision that defendant should be awarded a new trial.

Justice NEWBY joins in this dissenting opinion.